**Bruce S. HARVEY and James D. Cunningham, Plaintiffs,**

v.

**COBB COUNTY, GEORGIA, Defendant.**

**Civ. A. No. 1:92–cv–45–MHS.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 13, 1993.

Michael Raymond Hauptman, Hauptman & Rothstein, Marshall Lewis Cohen, Office of Marshall L. Cohen, Gerald R. Weber, American Civil Liberties Union, Atlanta, GA, for plaintiffs.

Fred Douglas Bentley, Jr., Jerry Lovvorn Gentry, Carol Awtrey Callaway, Office of Cobb County Atty., Law Dept., Marietta, GA, for defendant.

## ORDER

SHOOB, Senior District Judge.

This case requires the Court to decide whether a framed panel of the Ten Commandments and the so-called Great Commandment displayed in a county courthouse building violates the Establishment Clause of the First Amendment of the United States Constitution. That decision affects not only the litigants in this case but more broadly our concept of full religious freedom—to believe or not to believe, to participate or not to participate, as one pleases—and whether we truly insist, as

did Thomas Jefferson in 1802, that there must be a "wall of separation between church and State."

For the reasons stated below, the Court concludes that the Ten Commandments and the Great Commandment are essentially religious texts in the Jewish and Christian traditions and that the display standing alone in a county courthouse violates the Establishment Clause of the First Amendment of the United States Constitution. This order, however, will be stayed for four months to give defendant an opportunity to include the panel in a larger display of non-religious, historical items, which may bring it within constitutional parameters.

To those who have asked the Court by phone calls and letters "to save the Ten Commandments," the Court points out that the Ten Commandments are not in peril. They may be displayed in every church, synagogue, temple, mosque, home, and storefront. They may be displayed on lawns and in corporate board rooms. Where this precious gift cannot, and should not, be displayed as a religious text is on government property. For any erosion of the Bill of Rights—restraints voluntarily imposed by the majority to protect the rights of the minority—will inevitably produce prejudice and persecution.

In January 1992, plaintiffs [1] brought suit against defendant Cobb County, seeking declaratory and injunctive relief for the County's acquisition, installation, display, and maintenance of a framed panel of the Ten Commandments and the Great Commandment displayed in the Cobb County State Court Building. Plaintiffs contend that the displayed panel violates the First Amendment of the United States Constitution [2] and the comparable provision of the Georgia Constitution [3] and also violates their civil rights under 42 U.S.C. §§ 1983, 1988. In April 1992, the Court consolidated the preliminary injunction hearing with the trial of this matter under Federal Rule of Civil Procedure 65(a)(2). Based on the evidence at trial and the parties' proposed findings of fact and conclusions of law, the Court enters the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a).

## I. FINDINGS OF FACT

1. The display in this case is a three-by-five-foot framed panel that hangs alone in an alcove above a marble bench near the Traffic Court courtrooms and the Clerk's Office on the first floor of the Cobb County State Court Building, which is part of the Cobb County Judicial Complex.

2. The panel contains the following language:

### THE TEN COMMANDMENTS

1. Thou shalt have no other gods before me.

2. Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the water under the earth: thou shalt not bow down thyself to them, nor serve them: for I the LORD thy God am a jealous God, visiting the iniquity of the fathers upon the children unto the third and fourth generation of them that hate me; and shewing mercy unto thousands of them that love me, and keep my commandments.

3. Thou shalt not take the name of the LORD thy God in vain; for the LORD will not hold him guiltless that taketh his name in vain.

4. Remember the Sabbath day, to keep it holy. Six days shalt thou labour, and do all thy work: but the seventh day is the Sabbath of the LORD thy God: in it thou shalt not do any work, thou, nor thy son, nor thy daughter, thy manservant, nor thy maidservant, nor thy cattle, nor thy stranger that is within thy gates: for six days the LORD made heaven and

---

1. Plaintiff Bruce Harvey is Jewish and plaintiff James Cunningham is an agnostic.

2. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I, cl. 1.

3. Ga. Const. art. 1, § 2, ¶ 7.

earth, the sea, and all that in them is, and rested the seventh day: wherefore the LORD blessed the Sabbath day, and hallowed it.

5. Honor thy father and thy mother: that thy days may be long upon the land which the LORD thy God giveth thee.

6. Thou shalt not kill.

7. Thou shalt not commit adultery.

8. Thou shalt not steal.

9. Thou shalt not bear false witness against thy neighbor.

10. Thou shalt not covet thy neighbor's house, thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his ox, nor his ass, nor anything that is thy neighbor's.

Jesus said: 1. Thou shalt love the LORD thy GOD with all thy heart, and with all thy soul, and with all thy mind. 2. Thou shalt love thy neighbor as thy self. On these two commandments hang all the law and the prophets.

3. At trial, Rabbi Shalom Lewis of Synagogue Etz Chaim in Cobb County testified that

the "Ten Commandments" that appears parallels the Jewish version of the "Ten Commandments", which comes, of course, from the Bible, the Old Testament, as referred to within the Christian community. The Sixth Commandment, though, is a mistranslation. The translation here says "Thou shalt not kill." That is not what the text says in the original Hebrew, which says "Thou shalt not murder."

The second part of the text, ... the statements attributed to Jesus, ... appear in the New Testament, ... but ... originally appear in the Bible in the Five Books of Moses. The first quote, ... "You shall love the Lord your God with all your heart," is one of the fundamental Jewish creeds found in Deuteronomy. The second half of that, which is the quote "Love your neighbor as yourself," comes from Leviticus, Chapter 19. And the third part ... is actually a paraphrase borrowed from Rabbinic litera-

ture by Rabbi Hillel, which precedes even the birth of Jesus.

(Trial Tr. at 74–75.)

4. Rabbi Lewis's unchallenged testimony was supported by the testimony of The Reverend James Houston Wheeler, an ordained minister of the United Church of Christ. Reverend Wheeler also testified that, in the Christian tradition, Jesus is considered the Messiah, the Christ, a fulfillment of a promise made in the Bible or Old Testament, and his words are the words of God. (Trial Tr. at 90.)

5. Leif Carter, lawyer and professor of political science at the University of Georgia, and George Beggs, dean of the School of Arts and Behavioral Sciences and professor of political science at Kennesaw State College, both testified that the Ten Commandments are one of many sectarian and non-sectarian influences on the formation of Western law in general and the United States Constitution in particular. Examples of other influences are the Code of Hammurabi, the Justinian Code, and the philosophies of Plato, St. Augustine, and St. Thomas Aquinas.

6. The following persons testified about the panel itself: William Cox, Custodian Coordinator of Cobb County; Mack Henderson, Cobb County Manager; Herbert McCollum, former Commissioner of Cobb County; and Conley Ingram, attorney and former Justice of the Supreme Court of Georgia. They stated that the panel was donated to Cobb County by the Gardner family sometime before 1939. Between 1939 and 1967, the panel hung on the outside wall of the old Cobb County Courthouse. In 1967, the panel, along with other items, was moved from the old Courthouse to its present location by Cobb County inmates, who are housed, fed, and transported by Cobb County. During the past twenty-five years, the panel has, on several occasions, been dusted by a night cleaning crew consisting of Cobb County inmates and a supervisor employed by Cobb County. The crew once removed and then re-

placed the panel to clean the heavy buildup of nicotine around and behind the panel.

7. On July 15, 1991, plaintiffs, through their counsel, wrote to Dr. Phillip Secrist, Chairman of the Cobb County Board of Commissioners, requesting removal of the panel on the ground that its display in the State Court Building violated the Establishment Clause.

8. On July 19, 1991, Mack Henderson, Cobb County Manager, responded to the letter, stating that the Board of Commissioners was against the removal of the panel and had recently voted to support the continued display of the panel in the State Court Building.

9. On January 6, 1992, plaintiffs brought the present action against Cobb County and moved for a temporary restraining order. On January 9, 1992, following a hearing, the Court denied plaintiffs' motion for a temporary restraining order, expressing concern about plaintiffs' standing to maintain this action. The trial of this action, advanced and consolidated with the hearing of plaintiffs' motion for a preliminary injunction under Rule 65(a)(2), was held on April 23, 1992.

10. Plaintiff Harvey is employed as a criminal defense attorney with an office in Fulton County, Georgia, in the City of Atlanta, and has a state-wide practice. During the past two years, approximately fifteen percent of Harvey's practice has been in Cobb County, and approximately five percent of this has been in State Court. During the past year, Harvey has appeared in five or six cases in Traffic Court and presently has one case pending in Traffic Court. Harvey has seen or passed by the panel each time that he has been in the State Court Building. He neither avoids nor seeks out the panel, though he is often near the panel, talking to clients, witnesses, and other attorneys.

11. As an attorney, Harvey is offended by the display of "a religious symbol ... in a secular courthouse." (Tr. Hr'g Pls' T.R.O. Mot. at 17–18.) Harvey believes that the display of the panel sends the message to some of his clients, those who are neither Christians nor "believers," that "they are starting unequal" in the Cobb County court system. (*Id.* at 18.) Harvey has neither modified his behavior nor altered his law practice because of the display of the panel.

12. Plaintiff Cunningham lives in the city of Smyrna in Cobb County and is a resident property owner and taxpayer in Cobb County. During the past three years, he has entered the State Court Building as a defendant and as a juror approximately twenty times and has seen the panel many times, often during his wanderings through the Judicial Complex.

13. Cunningham views the panel as "purely religious" and Cobb County's display of it as indicative of the influence of religion in general and Christianity in particular on "our government" and court system. (Trial Tr. at 42–43.) He has not modified his behavior because of the display of the panel.

## II. CONCLUSIONS OF LAW

### A. *Standing*

The threshold issue is whether plaintiffs have standing to challenge Cobb County's display of the panel in the State Court Building. Harvey contends that he has standing as a citizen; Cunningham contends that he has standing as a citizen and a taxpayer.

 Under Article III of the United States Constitution, the judicial power is limited to the resolution of "cases" or "controversies." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *see Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982); *Saladin v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir.1987). "As part and parcel of the case or controversy requirement, a litigant must have 'standing' be-

fore he can bring a lawsuit in federal court." *Id.* (citations omitted).

■ Standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (quoting *Barrows v. Jackson,* 346 U.S. 249, 255–56, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953)). These constitutional limitations require

> the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758 (citations omitted). Although spiritual or psychological harm that results from contact with the offensive conduct or object is not enough to establish injury for purposes of standing, non-economic harm, regardless of how small, is enough as long as the injury is a direct, personal one. *Id.* at 484–87, 102 S.Ct. at 765–66; *United States v. SCRAP,* 412 U.S. 669, 686–89, 93 S.Ct. 2405, 2415–16, 37 L.Ed.2d 254 (1973).

The prudential limitations of standing require consideration of three issues:

> (1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; (2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and (3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*Saladin,* 812 F.2d at 690. Nonetheless, the essence of standing is "whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions....' " *Id.* at 690 (quoting *Baker v.*

*Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).

1. Citizen Standing

■ Plaintiff Harvey's law practice in Cobb County requires him to enter the State Court Building and, because of the location of the panel, brings him into direct contact with the panel. As *School District of Abington Township v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), and two subsequent Eleventh Circuit cases, *American Civil Liberties Union v. Rabun County Chamber of Commerce,* 698 F.2d 1098, 1108 (11th Cir.1983), and *Saladin v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir.1987), make clear, this "unwelcome" direct contact with the offensive object is enough to establish injury for purposes of standing.

In *Abington,* the Supreme Court invalidated laws that required Bible reading in the public schools. 374 U.S. at 226, 83 S.Ct. at 1573. Plaintiffs were children who attended the schools in question and their parents. The Court noted:

> It goes without saying that the laws and practices involved here can be challenged only by persons having standing to complain.... The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain.

*Id.* at 224 n. 9, 83 S.Ct. at 1572 n. 9 (citations omitted). Thus, "plaintiffs ... had standing ... because [they] were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them." *Valley Forge,* 454 U.S. at 486 n. 22, 102 S.Ct. at 767 n. 22.

In *Rabun County,* the Eleventh Circuit held that two citizens of Georgia had standing to challenge the display of a large illuminated cross located in Black Rock Mountain State Park in Georgia and visible from miles around. 698 F.2d at 1108. The court noted that one plaintiff, who operated a summer camp which looked out on the cross, was "injured" because he was forced

to view the cross continually while on the summer camp grounds. *Id.*

In *Saladin,* plaintiffs, who lived in and around the city of Milledgeville, challenged the City's use of the word "Christianity" on the city seal. The Eleventh Circuit held that these plaintiffs, like those in *Rabun County* and *Schempp,* also had standing because they "come into direct contact with the offensive conduct." 812 F.2d at 692. The court noted that "at least three of the plaintiffs regularly receive correspondence on city stationery bearing the seal from the City's Water Works, and at least two of the plaintiffs are active in civic organizations which received proclamations from the Mayor's office embossed with the seal and were present at the presentation of the proclamations." *Id.; accord Harris v. City of Zion,* 927 F.2d 1401 (7th Cir.1991).

■ Like the plaintiffs in *Schempp, Rabun County,* and *Saladin,* plaintiff Harvey comes into direct contact with the alleged offensive conduct, and Harvey's standing to bring this action is not predicated on avoidance of the conduct or assumption of a special burden. Like the plaintiffs in *Schempp* who stayed in school, the plaintiff in *Rabun County* who continued to operate his summer camp, and the plaintiffs in *Saladin* who remained in Milledgeville, Harvey is not required to change his life—to cease practice in the State Court of Cobb County or to avoid the panel while in the State Court Building—to establish injury for purposes of standing. *Cf. Freedom From Religion Foundation, Inc. v. Zielke,* 845 F.2d 1463, 1469 (7th Cir.1988) (appellant lacked standing because she had not demonstrated that "she lives anywhere near Cameron Park [where the challenged monument was displayed], that the monument is visible in the course of her normal routine, or that her usual driving or walking routes take her past the park"). Here it is enough that Harvey's job on occasion brings him into direct contact with the panel, and this sets Harvey apart from the general public and shows that his grievance is not "shared in substantially equal measure by all or a large class of citizens." *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205.

Accordingly, the Court concludes that Harvey has standing as a citizen to bring this action.

### 2. Taxpayer Standing

The central case on the issue of taxpayer standing is *Frothingham v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). *Frothingham* limited the standing of federal taxpayers to challenge the constitutionality of federal expenditures, but left unchanged the standing of municipal taxpayers to sue to enjoin an illegal use of a municipal corporation's public funds. "The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate." *Id.* at 486, 43 S.Ct. at 601. The Supreme Court's recognition of the standing of municipal taxpayers has been affirmed by several lower courts. *See, e.g., Freedom From Religion Foundation, Inc. v. Zielke,* 845 F.2d 1463, 1469–70 (7th Cir.1988); *Gwinn Area Community Schools v. State of Michigan,* 741 F.2d 840, 844 (6th Cir. 1984); *Ridgefield Women's Political Caucus, Inc. v. Fossi,* 458 F.Supp. 117, 120 n. 3 (D.Conn.1978).

■ To establish standing to bring this action as a municipal taxpayer, Cunningham must show that he was or is a Cobb County resident taxpayer and that Cobb County has used or will use tax money on the acquisition, installation, preservation, maintenance, or display of the panel. *See Flast v. Cohen,* 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968); *Zielke,* 845 F.2d at 1469–70. The parties do not dispute that Cunningham was and is a Cobb County resident property owner and taxpayer, but do dispute whether Cobb County has expended tax money on the panel.

■ Cobb County contends that it neither has used nor ever will use tax money on the panel and stresses that the panel was a gift donated to Cobb County by the Gardner family before 1939. The facts, however, show that in 1967 the panel was moved from the old Courthouse to its present location by Cobb County inmates. Fur-

ther, the panel has been dusted by a night cleaning crew consisting of Cobb County inmates and a supervisor employed by Cobb County several times during the past twenty-five years. On one occasion the panel was taken down and replaced by the crew after removing the heavy buildup of nicotine on the panel. These actions by a supervisor and by Cobb County inmates, who were housed, fed, and transported by Cobb County at Cobb County's expense, constitute the use of tax revenues, however small and indirect, on the panel. Accordingly, the Court concludes that Cunningham has standing to bring this action as a Cobb County taxpayer.[4]

## B. *Establishment Clause*

■ The modern test for determining whether a government act violates the Establishment Clause of the First Amendment was articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971): A statute or practice that touches upon religion, "first, ... must have a secular purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; [and] finally, ... must not foster 'an excessive entanglement with religion.'" *Id.* at 612–13, 91 S.Ct. at 2111 (citations omitted). "State action violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987).

In recent years, beginning with *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), where the Court upheld the display of a creche as part of an overall holiday display, the Court has emphasized and elaborated upon the second prong of the *Lemon* test—that the principal or primary effect of the government action must not be either to advance or inhibit religion. Justice Blackmun, writing for a divided Court in *County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 109 S.Ct.

3086, 106 L.Ed.2d 472 (1989), reviewed the Court's decision in *Lynch* and distilled the relevant constitutional principles: "[T]he government's use of religious symbolism is unconstitutional if it has the effect of endorsing religious beliefs, and the effect of the government's use of religious symbolism depends upon its context." 492 U.S. at 597, 109 S.Ct. at 3103. "The prohibition against governmental endorsement of religion 'preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is *favored* or *preferred.*'" *Id.* 492 U.S. at 593, 109 S.Ct. at 3101 (quoting *Wallace v. Jaffree*, 472 U.S. 38, 70, 105 S.Ct. 2479, 2497, 86 L.Ed.2d 29 (1985)) (O'Connor, J., concurring). "'The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.'" *Id.* 492 U.S. at 605, 109 S.Ct. at 3107 (quoting *Larson v. Valente*, 456 U.S. 228, 244, 102 S.Ct. 1673, 1683, 72 L.Ed.2d 33 (1982)). Nor can government favor religion over non-religion. *Id.* 492 U.S. at 593, 109 S.Ct. at 3101; *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 26, 109 S.Ct. 890, 906, 103 L.Ed.2d 1 (1989) (White, J., concurring in judgment).

In *Allegheny,* the Court examined two displays on public property in downtown Pittsburgh, one of a creche standing alone in a courthouse staircase and one of a menorah displayed as part of a larger winter holiday exhibit in front of the City-County building. The creche used words in its portrayal of the nativity scene—the angel in the creche said "Glory to God in the Highest!" 492 U.S. at 598, 109 S.Ct. at 3103. By contrast, the winter holiday exhibit included a sign with the words "Salute to Liberty" placed below the Christmas tree. The Court concluded that the creche display violated the Establishment Clause and the menorah display did not. *Id.* 492 U.S. at 600, 109 S.Ct. at 3105.

Although the Court in *Allegheny* was sharply divided,[5] it was unified in its ap-

---

**4.** Since the Court concludes that Cunningham has standing as a municipal taxpayer, the Court need not reach Cunningham's claim to citizen standing.

**5.** Only Justices Blackmun and O'Connor voted to find the creche display unconstitutional and the menorah display constitutional. Three Justices, Brennan, Marshall, and Stevens, voted to

proach, focusing on the content and context of each display. *Id.* 492 U.S. at 596, 109 S.Ct. at 3103. Justice Blackmun's analysis in *Allegheny* exemplifies this approach. In evaluating the creche display, Justice Blackmun first focused on the content of the creche, noting that it sends an unmistakable religious message: "Glory to God because of the birth of Jesus. This praise to God in Christian terms is indisputably religious—indeed sectarian—just as it is when said in the Gospel or in a church service." *Id.* 492 U.S. at 598, 109 S.Ct. at 3103.

Justice Blackmun then focused on the physical setting and location of the displays. First, he noted that "the creche stands alone: it is the single element of the display on the Grand Staircase." *Id.* 492 U.S. at 598, 109 S.Ct. at 3104. From this he concluded that "nothing in the context of the display detracts from the creche's religious message." *Id.* 492 U.S. at 598, 109 S.Ct. at 3103-04. Second, he noted that the creche "sits on the Grand Staircase, the 'main' and 'most beautiful part' of the building that is the seat of county government." *Id.* 492 U.S. at 598, 109 S.Ct. at 3104. He concluded that "[n]o viewer could reasonably think that it occupies this location without the support and approval of the government." *Id.* In evaluating the menorah display, Justice Blackmun concluded that the Christmas tree and the sign saluting liberty and the holiday season neutralized the religious dimension of the menorah display and emphasized its secular dimensions. *Id.* 492 U.S. at 616–19, 109 S.Ct. at 3113-15.

**1. The Content of the Display**

In evaluating the constitutionality of the display of this panel in the Cobb County Judicial Complex, this Court must likewise consider the content and context of the panel to determine whether it "has the effect of endorsing or disapproving religious beliefs." *Allegheny*, 492 U.S. at 597,

109 S.Ct. at 3103. The content of the panel, the Ten Commandments and the so-called Great Commandment attributed to Jesus of Nazareth, is undeniably religious. As Rabbi Lewis, Reverend Wheeler, and Professors Carter and Beggs all testified, the Ten Commandments are an integral part of the Jewish and Christian traditions, appearing in the Book of Exodus in the Bible or Old Testament.[6]

In addition, the summary of the Ten Commandments, the Great Commandment, which appears in the New Testament[7] and which is included at the bottom of the panel, emphasizes the religious nature of the panel and its association with the Christian tradition. As Reverend Wheeler testified, in the Christian tradition, Jesus is considered the Messiah, the Christ, a fulfillment of a promise made in the Bible or Old Testament, and Jesus' words are the words of God. Further, the panel's association with the Christian tradition is accentuated by the language of the Sixth Commandment prohibiting killing. As Rabbi Lewis testified, this version of the Sixth Commandment is a mistranslation of the original Hebrew, which prohibits murder, and frequently appears in Christian versions of the Ten Commandments.

Nonetheless, Cobb County argues that the content of the panel is not religious: the display merely represents a recognition of a "historical, jurisprudential cornerstone of American legal significance." (Def.'s Resp. to Pls' T.R.O. Mot. at 10.) This argument was considered and rejected by the Supreme Court in *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980). There the Court held that the display of a copy of the Ten Commandments on the walls of public classrooms violated the Establishment Clause. The Court reached its decision despite the state legislature's requirement that each copy of the Ten Commandments be printed with the words "The secular application of the Ten Commandments is clearly seen in its adop-

find both the creche and the menorah unconstitutional. Finally, three Justices, Rehnquist, Scalia, and Kennedy, voted to find both displays constitutional.

6. *Exodus* 20:1–17; *cf. Deuteronomy* 5:6–21.

7. *Matthew* 22:34–40; *Mark* 12:28–34; *Luke* 10:25–28.

tion as the fundamental legal code of Western Civilization and the Common law of the United States." *Id.* at 41, 101 S.Ct. at 193.

The Court in *Stone* concluded that the "pre-eminent purpose for posting the Ten Commandments on schoolroom walls is plainly religious in nature. The Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact." *Id.* (footnote omitted). As Rabbi Lewis, Reverend Wheeler, and Professors Carter and Beggs all concluded, these Biblical texts, the Ten Commandments and the Great Commandment, are undeniably religious and to deny this is to deny their essence. "Surely the place of the Bible as an instrument of religion cannot be gainsaid...." *Abington*, 374 U.S. at 224, 83 S.Ct. at 1572. Thus, the Court concludes that the content of these documents is religious in nature. *Accord Anderson v. Salt Lake City*, 348 F.Supp. 1170 (D.Utah 1972).

### 2. The Context of the Display

*Allegheny* also mandates a close examination of the context of the display to determine whether its overall effect endorses religion. 492 U.S. at 596, 109 S.Ct. at 3103. The Court must consider several factors, the most important of which are the location and physical setting of the display. In *Allegheny*, the Court found the display of the creche unconstitutional since the creche stood alone on the Grand Staircase of the County Courthouse building. *Id.* 492 U.S. at 598, 109 S.Ct. at 3104; *see also Chabad–Lubavitch v. Miller*, 976 F.2d 1386 (11th Cir.1992).

Here, too, the display stands alone in the alcove, and there are no countervailing secular passages or symbols. "[N]othing in the context of the display detracts from the [panel's] religious message." *Allegheny*, 492 U.S. at 598, 109 S.Ct. at 3103–04. Moreover, the display is located in the Cobb County State Court Building, a seat of judicial authority in the county. Although the panel is not located in the most prominent part of the building, it is, nonetheless, located high on the wall, above a marble bench, near the Clerk's Office and the Traffic Court courtrooms. "No viewer could reasonably think that it occupies this location without the support and approval of the government." *Id.* The Court concludes that the panel, when considered in its context, has the effect of endorsing religion in general and Christianity in particular and therefore violates the Establishment Clause.[8]

### III. CONCLUSION

Professor Leif Carter stated that he "would not object to having the plaque on the wall exactly as it is written as long as it were part of a display to try to include all the various moral, historical, and political influences on our legal system" such as the Code of Hammurabi, the Code of Justinian, and passages from early English cases. (Trial Tr. at 121–23.) The Court agrees with Professor Carter that an appropriate educational display that includes the panel would pass constitutional muster. As Justice Stevens has noted:

> [A] carving of Moses holding the Ten Commandments, if that is the only adornment on a courtroom wall, conveys an equivocal message, perhaps of respect for Judaism, for religion in general, or for law. The addition of carvings depicting Confucius and Mohammed may honor religion, or particular religions, to an extent that the First Amendment does not tolerate any more than it does "the permanent erection of a large Latin cross on the roof of city hall." Placement of secular figures such as Caesar Augustus, William Blackstone, Napoleon Bonaparte, and John Marshall alongside these three religious figures, however, signals respect not for great proselytizers but for great lawgivers. It would be absurd to exclude such a fitting message from a courtroom, as it would to exclude religious paintings by Italian Renaissance masters from a public museum.

---

**8.** Because the Court concludes that Cobb County's display of the panel fails to satisfy the second prong of the *Lemon* test, the Court need not reach the first and third prongs.

*Allegheny,* 492 U.S. at 652, 109 S.Ct. at 3132 (Stevens, J., concurring in part and dissenting in part) (citations and footnote omitted).

Accordingly, the Court GRANTS plaintiffs' motion for injunctive relief, but STAYS this order for four months to give Cobb County, in consultation with plaintiffs, an opportunity to develop an educational display including the Ten Commandments panel. *See Chabad–Lubavitch,* 976 F.2d at 1395–96 (Kravitch, J., concurring in part and dissenting in part). To this end, the Court DIRECTS the parties to meet within fifteen days of the date of this order and to file a joint report to the Court within ninety days of the date of this order. The Court suggests that defendant employ Professor Leif Carter as a consultant for his assistance and recommendations in the development of a display.

If Cobb County fails to develop an appropriate display approved by the Court, the panel must be removed.

IT IS SO ORDERED.