**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RICHARD SUHRE,
Plaintiff-Appellant,

v.

HAYWOOD COUNTY, North Carolina,
Defendant-Appellee,

and

No. 97-1457

BOARD OF COMMISSIONERS; THE
MANAGER OF HAYWOOD COUNTY,
NORTH CAROLINA,
Defendants.

THE RUTHERFORD INSTITUTE;
AMERICANS UNITED FOR SEPARATION
OF CHURCH AND STATE,
Amici Curiae.

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-94-179-1)

Argued: October 1, 1997

Decided: December 12, 1997

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

_____

Reversed and remanded by published opinion. Chief Judge Wilkinson
wrote the opinion, in which Judge Wilkins and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Anna Elizabeth Daly, Charlotte, North Carolina, for Appellant. Jonathan Drew Sasser, MOORE & VAN ALLEN, P.L.L.C., Raleigh, North Carolina, for Appellee. **ON BRIEF:** George Daly, Charlotte, North Carolina, for Appellant. Leon M. Killian, III, KILLIAN, KERSTEN & PATTON, P.A., Waynesville, North Carolina, for Appellee. Gregory D. Smith, Clarksville, Tennessee; Gregory N. Hopkins, Huntsville, Alabama, for Amicus Curiae The Rutherford Institute. Steven K. Green, AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, Washington, D.C., for Amicus Curiae Americans United.

_____

**OPINION**

WILKINSON, Chief Judge:

Richard Suhre, a resident of Haywood County, North Carolina, asserts that the maintenance of a Ten Commandments display in the main courtroom of the Haywood County Courthouse violates the Establishment Clause of the First Amendment. He appeals the district court's ruling that he lacks standing to pursue this claim either as a citizen or as a municipal taxpayer. Because we find that Suhre does have standing as a citizen to press his Establishment Clause claim, we reverse the district court and remand for further proceedings.

I.

At the heart of this lawsuit is a display located in the main courtroom of Haywood County's Courthouse. On the wall behind the judge's bench is a marble and plaster bas-relief representation of Lady Justice blindfolded and holding scales and a sword. She is flanked by two marble tablets containing an abridged version of the Ten Commandments. The text can be read from the jury box and the front half of the chamber. The courtroom containing the Ten Commandments display is used by both the County's Superior and District courts.

Suhre has been a contentious character in Haywood County. He has been party to a number of legal actions, several of which involved

2

hearings in the main Haywood County courtroom. For example, proceedings in at least two of the five prosecutions he brought against his neighbors for violations of the County noise ordinance took place in this courtroom. A civil suit Suhre filed against the County was dismissed in a proceeding he attended in the Ten Commandments courtroom. And Suhre was twice convicted of misdemeanor telephone harassment in this courtroom.

In addition to providing a forum for judicial business, the main courtroom also hosts a variety of public and governmental meetings. The County Commissioners hold their annual public budget hearings in that courtroom. And Suhre recalls attending at least four other meetings in the courtroom, including a public hearing on road maintenance, a meeting of the County agricultural department regarding land use rules, a public meeting about the noise ordinance, and a meeting held by a candidate for state legislature. Suhre asserts that the courtroom is "a popular place to hold meetings."

An avowed atheist, Suhre claims he is offended and "filled with revulsion" when he sees the Ten Commandments on the main courtroom wall. He also fears that the presence of the Ten Commandments skews the application of the law by influencing juries to base their decisions on religious rather than legal precepts. Though Suhre cannot say that the presence of the Ten Commandments on the courtroom wall has caused him to alter his conduct in any way, he avers that contact with the display causes him distress.

After he unsuccessfully requested that the County remove the Ten Commandments from the courtroom, Suhre filed this suit pursuant to 42 U.S.C. § 1983 against the Board of Commissioners of Haywood County, the County Manager, and the Commissioners in their official capacities. He sought a declaratory judgment that the continued presence of the Ten Commandments in the courtroom is unconstitutional and an injunction against maintenance of the tablets on which the commandments are displayed. He also sought an award of attorneys' fees. Suit was dismissed against the individual defendants, leaving the County, through the Board of Commissioners, as the only defendant. The district court granted the County's motion for summary judgment, holding that Suhre lacked standing either as a citizen or as a

3

municipal taxpayer to challenge the County's display of the Ten Commandments. Suhre now appeals.

II.

In denying Suhre citizen standing to challenge Haywood County's Ten Commandments display, the district court reasoned that his unwelcome direct contact with a state-sponsored religious display did not satisfy the injury-in-fact requirement for standing. We cannot agree and hold that Suhre does possess standing as a citizen to pursue his Establishment Clause claim.* We express no view, however, on the merits of Suhre's claim.

A.

Like others seeking the aid of the courts, Establishment Clause plaintiffs satisfy Article III only when they demonstrate that they have suffered injury in fact that was caused by the conduct they challenge and is redressable by a judicial decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). It has been repeatedly noted that "the concept of injury for standing purposes is particularly elusive in Establishment Clause cases." Murray v. City of Austin, 947 F.2d 147, 151 (5th Cir. 1991); see also Saladin v. City of Milledgeville, 812 F.2d 687, 691 (11th Cir. 1987); ACLU v. City of St. Charles, 794 F.2d 265, 267-68 (7th Cir. 1986); ACLU v. Rabun County, 698 F.2d 1098, 1102 (11th Cir. 1983). However, as the Constitution establishes no hierarchy of constitutional rights, there is of course no "`sliding scale' of standing." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 484 (1982).

Nonetheless the standing inquiry in Establishment Clause cases has been tailored to reflect the kind of injuries Establishment Clause plaintiffs are likely to suffer. Tort law is solicitous of, among other things, plaintiffs' physical well-being. Contract law protects plaintiffs' business expectations. But the Establishment Clause plaintiff is not likely to suffer physical injury or pecuniary loss. Rather "the spiri-

_____

*We do not consider Suhre's alternative theory of municipal taxpayer standing.

4

tual, value-laden beliefs of the plaintiffs" are often most directly affected by an alleged establishment of religion. See Rabun County, 698 F.2d at 1102. Accordingly, rules of standing recognize that non-economic or intangible injury may suffice to make an Establishment Clause claim justiciable. Valley Forge, 454 U.S. at 486; Smith v. County of Albemarle, 895 F.2d 953, 955 (4th Cir. 1990).

B.

Religious display cases are an even more particularized subclass of Establishment Clause standing jurisprudence. The injury that gives standing to plaintiffs in these cases is that caused by unwelcome direct contact with a religious display that appears to be endorsed by the state. Such personal contact with state-sponsored religious symbolism is precisely the injury that was sufficient to confer standing in School District of Abington v. Schempp, 374 U.S. 203 (1963). There school children and their parents challenged the Bible reading and prayer that, pursuant to state law, began each school day. Because the plaintiffs were "directly affected by the laws and practices against which their complaints [were] directed," the Court found that they had standing to pursue their Establishment Clause claim. Id. at 224 n.9. Schempp thus recognized "a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause and the Free Exercise Clause" to those persons directly affected by alleged violations of the First Amendment. See Association of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 154 (1970) (interpreting Schempp). In Valley Forge the Supreme Court confirmed that a proper Establishment Clause plaintiff must allege direct injury, like that experienced by the Schempp plaintiffs, who "were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them." Valley Forge, 454 U.S. at 487 n.22 (discussing Schempp).

Thus a mere abstract objection to unconstitutional conduct is not sufficient to confer standing. As the Court held in Valley Forge, "the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III." Id. at 485. Accordingly, a citizen of Omaha, Nebraska who finds a religious symbol in the Haywood County Courthouse to be offensive in the abstract would not have

5

standing to challenge it. The "injury" to our hypothetical Omaha plaintiff partakes of a generalized grievance, based on nothing more than each citizen's "shared individuated right to a government that `shall make no law respecting the establishment of religion.'" Id. at 470. The Supreme Court in Valley Forge could not have been clearer in its refusal to extend standing to such plaintiffs, fearing that such a lax standing requirement "would convert the judicial process into `no more than a vehicle for the vindication of the value interests of concerned bystanders'" or turn the courts "into judicial versions of college debating forums." Id. at 473 (quoting United States v. SCRAP, 412 U.S. 669, 687 (1973)). However, like Schempp before it, Valley Forge recognized that direct contact with an unwelcome religious exercise or display works a personal injury distinct from and in addition to each citizen's general grievance against unconstitutional government conduct. Plaintiffs were denied standing in Valley Forge because they had absolutely no personal contact with the alleged establishment of religion.

Applying Valley Forge, many lower courts have thus premised standing on the injury that results from unwelcome personal contact with a state-sponsored religious display. See, e.g., Saladin, 812 F.2d at 692; Kaplan v. City of Burlington, 891 F.2d 1024, 1027 (2d Cir. 1989). Plaintiffs alleging this injury have had standing to challenge religious symbolism in city seals and logos, Murray, 947 F.2d at 151; Foremaster v. City of St. George, 882 F.2d 1485, 1490-91 (10th Cir. 1989); Saladin, 812 F.2d at 692-93, religious-themed holiday displays, see, e.g., Kaplan, 891 F.2d at 1027, and even a Ten Commandments display in a county courthouse, Harvey v. Cobb County, 811 F. Supp. 669, 675 (N.D. Ga.), aff'd, 15 F.3d 1097 (11th Cir. 1994).

The Supreme Court identified the proximity of the plaintiffs to the conduct they challenged as a critical factual distinction between the school children in Schempp and the plaintiffs in Valley Forge. "We simply cannot see," said the Court, "that respondents have alleged an injury of any kind . . . sufficient to confer standing. Respondents complain of a transfer of property located in Chester County, Pa. The named plaintiffs reside in Maryland and Virginia. . . . They learned of the transfer through a news release." Valley Forge, 454 U.S. at 486-87 (footnotes omitted). The circuits have thus recognized that "[t]he practices of our own community may create a larger psycholog-

6

ical wound than someplace we are just passing through." Washegesic v. Bloomingdale Public Schools, 33 F.3d 679, 683 (6th Cir. 1994). Plaintiffs who "are part of the [community where challenged religious symbolism is located] and are directly affronted by the presence of [this symbolism]" certainly "have more than an abstract interest in seeing that [the government] observes the Constitution." Saladin, 812 F.2d at 693. Thus, where there is a personal connection between the plaintiff and the challenged display in his or her home community, standing is more likely to lie.

The spiritual affront of unwelcome contact with religious symbolism may also be compounded when the display that causes this distress is located within a public facility. Religious displays in public buildings may seem more in the nature of endorsements and may potentially impair the use of the affected facilities by individuals who harbor strong objections to a religious message. See Washegesic, 33 F.3d at 682 (recognizing that picture of Jesus Christ in public school impaired use of school by students and visitors); Hawley v. City of Cleveland, 773 F.2d 736, 740 (6th Cir. 1985) (recognizing that presence of sectarian chapel in airport impaired use of airport by passengers). Though individuals offended by a religious display may continue to utilize the facility in which it is located, their use of the facility may be compromised by repeated contact with religious views to which they are unable to subscribe.

C.

The County contends, however, that because Suhre has not changed his personal conduct on account of the Ten Commandments display he does not have standing to challenge it. It is true that some plaintiffs have curtailed their use of a public facility or otherwise gone out of their way to avoid contact with an offensive display. See, e.g., Rabun County, 698 F.2d at 1108 (campers avoided using park where large illuminated cross was located); Jewish War Veterans v. United States, 695 F. Supp. 3, 9-10 (D.D.C. 1988) (veteran avoided using facilities of military base where large illuminated cross was located). Plaintiffs who have actually stopped using a public facility or altered their daily routine because of state-sponsored religious symbolism likely satisfy the standing requirement of Article III. But their injury is conceptually distinct from that caused by unwelcome

7

contact with public religious symbolism; plaintiffs like the campers in Rabun County or the veteran in Jewish War Veterans have no direct contact with the offensive display and allege instead that their use of a public facility has been totally prevented by the presence of religious symbols there.

The County urges us to hold that an individual may only have standing to challenge a religious display if he alleges this sort of injury -- that is, if he has actually changed his behavior in response to the display. Compare Freedom from Religion Found., Inc. v. Zielke, 845 F.2d 1463, 1468 (7th Cir. 1988) (denying standing to challenge Ten Commandments display in a public park to residents who "concede[d] that they did not alter their behavior in any manner as a result of the Ten Commandments monument"), with Gonzales v. North Township, 4 F.3d 1412, 1416 (7th Cir. 1993) (granting standing to challenge crucifix in public park to residents who "stated that they avoid the area of the Park near the crucifix"). Under the County's view, Suhre lacks standing in this case because he has failed to prove that the religious display has actually caused him to avoid altogether the Haywood County courthouse. We cannot accept the County's position. We agree instead with the majority of circuits that have addressed this question that neither Supreme Court precedent nor Article III imposes such a change-in-behavior requirement. See, e.g., Foremaster, 882 F.2d at 1490-91 (rejecting Seventh Circuit approach). Such an extraordinary showing of injury, while sufficient, is not necessary to support standing to bring an Establishment Clause claim.

In evaluating standing, the Supreme Court has never required that Establishment Clause plaintiffs take affirmative steps to avoid contact with challenged displays or religious exercises. The student plaintiffs in Schempp had the option to leave the classroom during the Bible reading and prayer they protested. They chose not to assume this special burden, yet the Supreme Court readily found that they had standing to challenge the practice. 374 U.S. at 224 n.9. In Valley Forge itself, the Court interpreted Schempp to premise standing on the fact that plaintiffs "were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them," 464 U.S. at 487 n.22 (emphasis added), not that they in fact did assume these burdens. Writing for the Court in Valley Forge, Justice Rehnquist distin-

8

guished the abstract grievance of Americans United for Separation of Church and State from that of the school children in Schempp. But Valley Forge in no way overruled Schempp's recognition that direct contact with unwelcome religious symbolism endorsed by the state "surely suffice[s] to give the parties standing to complain." 374 U.S. at 224 n.9.

The best proof of our reading of Valley Forge lies in the actions of the Supreme Court itself. In two religious display cases subsequent to Valley Forge, Allegheny County v. ACLU, 492 U.S. 573 (1989), and Lynch v. Donnelly, 465 U.S. 668 (1984), the Court has proceeded to the merits of the challenges to the displays and found no infirmity in the standing of plaintiffs alleging direct contact with them. In neither case was there any indication that the plaintiffs had changed their conduct to avoid the display, and neither case intimated that this was a requirement for standing.

Absent Supreme Court direction, we are unwilling to craft a rule of standing for religious display cases that would effectively add "insult" to the existing "injury" requirement. Compelling plaintiffs to avoid public schools or buildings is to impose on them a burden that no citizen should have to shoulder. A public school or county courthouse exists to serve all citizens of a community, whatever their faith may be. Rules of standing that require plaintiffs to avoid public places would make religious minorities into outcasts. Forcing an Establishment Clause plaintiff to avoid the display of which he complains in order to gain standing to challenge it only imposes an extra penalty on individuals already alleged to be suffering a violation of their constitutional rights. We do not think Article III requires as much.

An avoidance requirement for standing in religious display cases also has a contrived quality. Take, for example, a plaintiff whose contact with a religious display is optional. In such cases, a plaintiff might easily enough take a different route to work or stay away from a particular public building for some special period of time in order to gain standing to sue. We are not convinced, however, that requiring Establishment Clause plaintiffs to jump through these sorts of hoops makes them any more legitimate than the individual who complains straightforwardly of direct unwelcome contact with a religious display. As for the plaintiff who does not have any realistic option of

9

avoiding contact, requiring such a person to quit work or to forgo school attendance or to resist a subpoena in order to gain standing seems a more onerous burden than Article III requires. Bringing such Establishment Clause plaintiffs to the verge of civil disobedience would go beyond what any court has heretofore decreed.

The case law in the circuits after Valley Forge reaffirms the view that direct contact with a religious display is sufficient and that changed behavior is not necessary for purposes of standing. In Rabun County the Eleventh Circuit held that one of the plaintiffs had standing to challenge a large illuminated cross in a state park solely "because the cross [was] clearly visible from the porch of his summer cabin at the religious camp which he directs as well as from the roadway he must use to reach the camp." 698 F.2d at 1108. This party alleged no change whatever in his conduct, yet the Eleventh Circuit found a cognizable injury sufficient to confer standing on the plaintiff.

This same view was confirmed in Saladin, where standing to challenge religious symbolism in the seal of the City of Milledgeville was found to lie even though plaintiffs did not allege that they had changed their behavior to avoid exposure to the seal. Standing was based on the very fact of personal contact with the seal, which was embossed on proclamations and correspondence from the City to plaintiffs. 812 F.2d at 692-93. Thus, the court observed, "like Rabun County and Schempp (and unlike Valley Forge), the [plaintiffs] come into direct contact with the offensive conduct." Id. at 692. The fact that the religious content of the seal offended the plaintiffs by "mak[-ing them] feel like second class citizens" was deemed sufficient injury to support standing. Id. at 692-93.

In Foremaster, the Tenth Circuit explicitly considered and rejected the requirement that a plaintiff allege a change in his behavior to gain standing. 882 F.2d at 1490-91. Like Saladin, that case involved a challenge to a city seal, specifically the seal of the City of St. George. Plaintiff claimed that the "visual impact" of the challenged religious symbol in the seal "ha[d] and continue[d] to greatly offend, intimidate and affect [him]." Id. Because he thus demonstrated "direct personal contact with offensive municipal conduct" he had standing, even after

10

Valley Forge, despite the fact that "he did not contend he changed his behavior." Id. at 1491.

In a case closely analogous to ours, Harvey v. Cobb County, the plaintiff's Establishment Clause challenge to a courthouse Ten Commandments display was allowed to go forward even though he alleged no change of behavior. 811 F. Supp. at 675. As the court explained, "[l]ike the plaintiffs in Schempp who stayed in school, the plaintiff in Rabun County who continued to operate his summer camp, . . . the plaintiffs in Saladin who remained in Milledgeville," and we would add the plaintiff in Foremaster who remained in St. George without changing his behavior, an Establishment Clause plaintiff who experiences unwelcome direct contact with a religious display "is not required to change his life" to establish injury for purposes of standing. 811 F. Supp. at 75. Like these courts, we are satisfied that such direct contact with the display sets a plaintiff "apart from the general public and shows that his grievance is not `shared in substantially equal measure by all or a large class of citizens.'" Id. (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)).

The case of Bell v. Little Axe Independent School District, 766 F.2d 1391 (10th Cir. 1985), illustrates the soundness of our approach. In Bell the plaintiffs, parents of public school children, actually had taken steps to remove their children from the school district alleged to have violated the Establishment Clause. Id. at 1399. Though they were ultimately granted standing, these plaintiffs had to contend with the claim that their self-help had rendered their constitutional claims moot. Id. A stringent requirement that plaintiffs take steps to cure their own injury would create mootness problems in many an Establishment Clause case. We are unwilling to put potential Establishment Clause plaintiffs to the task of precisely calibrating their reactions to offensive state-sponsored religious symbolism at the peril of either reacting too little to have standing or reacting so much that their constitutional claims are deemed moot.

III.

A.

The cognizable injury caused by personal contact with a public religious display may thus satisfy the injury-in-fact requirement for

11

standing to bring an Establishment Clause case. The plaintiff need not meet any additional change-in-behavior or avoidance requirement. In this regard, Suhre has had two kinds of direct contacts with the Ten Commandments display, both as a user of the courts and as a participant in local politics and government. First, Suhre comes into contact with the Ten Commandments display as a customer of the courthouse. The display is positioned to command the attention of all in the main courtroom, located as it is directly and prominently behind the judge's bench. Any participant in judicial proceedings in that courtroom comes into contact with the Ten Commandments display.

Suhre has been a plaintiff in a civil action and a complaining witness in numerous suits under the county noise ordinance. In at least two of these cases he was present in the main Haywood County courtroom. He has also been a defendant in a criminal action for misdemeanor telephone harassment. Both Suhre's bench trial and jury trial for telephone harassment took place in the Ten Commandments courtroom. In Suhre's case, unwelcome contact with the Ten Commandments display has caused him to doubt the fairness of judicial proceedings in the County. Suhre's atheism became apparent to the jury when he refused to swear on the Bible. Because the oath he took was pointedly devoid of any reference to a supreme being, he fears that he was convicted for violating the Ten Commandments, displayed so prominently before the jury.

We reject the County's suggestion that standing to challenge religious displays in courtrooms should extend no further than the courthouse family -- the judges and employees of the court and the attorneys who practice before them. These employees and attorneys have no reason to incur the ire of courthouse authorities by challenging the display. More broadly, the County's argument overlooks the fact that the courthouse, like any institution of government, serves not just those who are privileged to work there but the broader public as well.

Second, Suhre comes into contact with the Ten Commandments display as a participant in local government. He attends public meetings in the courtroom on matters of local concern. Deposition testimony indicated that the courtroom is regularly used in this fashion and that it serves in fact as a sort of municipal auditorium. The Board

12

of Commissioners holds its annual budget meetings in the Ten Commandments courtroom. And Suhre recalls attending four specific meetings on local issues in this courtroom. He attended a public hearing on road maintenance, a meeting on land use rules held by the County agricultural department, a public meeting about the noise ordinance and a campaign meeting sponsored by a candidate for state office.

These forms of contact are the sort that courts have routinely recognized as sufficient to establish standing in Establishment Clause cases. Suhre is a citizen of Haywood County. The display he challenges is in the main courtroom of Suhre's home community. This public facility lies at the center of local government, and Suhre must confront the religious symbolism whenever he enters the courtroom on either legal or municipal business.

B.

Whatever the extent of Suhre's past contact with the courtroom, the County objects that he has not demonstrated sufficient likelihood of future injury to allow him to pursue injunctive relief with respect to the Ten Commandments display. See City of Los Angeles v. Lyons, 461 U.S. 95, 102-06 (1983) (threat of injury must be"`real and immediate,' not `conjectural' or `hypothetical'").

In Lyons, the Supreme Court held that the likelihood that the plaintiff would again be arrested and subjected to a chokehold was too remote to give him standing to seek an injunction against police arrest techniques. Lyons complained that he was injured by a single use of excessive force by the police. The Court explained that Lyons' standing could only rest on a series of untenable assumptions: not only that he would have another encounter with the police but also "the incredible assertion either (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter . . ., or (2) that the City ordered or authorized police officers to act in such manner." Id. at 105-06. The Court was unwilling to credit those possibilities, but it did reaffirm that past exposure to illegal conduct was "evidence bearing on `whether there is a real and immediate threat of repeated injury.'" Id. at 102 (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)). In Adarand Constructors, Inc. v. Pena, the Supreme

13

Court reiterated that the fact of past injury does not alone establish "a real and immediate threat" of future injury. 515 U.S. 200, 210-11 (1995). But, as the Court had recognized in Lyons, past injury was probative of likely future injury. A pattern of past participation in the challenged contract bidding process and the stated intention to participate in that process in the future combined to give the plaintiff standing. Id. at 211-12.

Suhre's case is more like Adarand than Lyons. There is evidence of repeated unwelcome exposure to the Ten Commandments display: Suhre has demonstrated a pattern of ready resort to the courts to enforce the county noise ordinance; he has participated in other suits, both civil and criminal and as both complainant and defendant; he has attended various public meetings there, including both political gatherings and meetings on local legislative issues. These past actions brought him into contact with the display. As the Supreme Court recognized in Adarand, Suhre's past experience bears on the likelihood of imminent future injury. In Suhre's case, that past experience includes not only many different occasions of contact with the courtroom but many different reasons for the contact as well.

Suhre's standing does not rest on past injury alone. Again, as in Adarand but unlike in Lyons, Suhre has stated an unmistakeable intention to participate in future judicial and municipal business at the courthouse when the occasion arises. Unlike the series of "incredible assertions" necessary to give Lyons standing, Suhre asserts, quite plausibly, that the County will in the future hold another public meeting in the Ten Commandments courtroom; that he will be invited to this meeting as a member of the Haywood County community; and that he will elect to attend. After the conclusion of this litigation, he intends to hold a public debate on the positions of the Christian Coalition in the Ten Commandments courtroom. Suhre's future involvement with judicial proceedings also seems to be likely. He has initiated several lawsuits under the County's noise ordinance and says he will resume litigation should his neighbors' dogs disturb him again. The likelihood of barking dogs perturbing Suhre's peace is far greater than the slim chance that Lyons would again be arrested and subjected to a chokehold. As in Lyons, one of the above potentialities alone may not be sufficient for standing to pursue an injunction, but taken together they evidence "a real and immediate threat of repeated

14

injury" that establishes Suhre's standing to challenge the Ten Commandments display.

IV.

Under our constitutional system, courts have a long tradition of resolving questions of religious freedom. Some of the claimants that come to court will not prevail, but a restrictive rule of standing shuts the door on the meritorious and nonmeritorious alike. Conversely, an open-ended rule transforms courtrooms into forums for the airing of abstract debates. As a result, casual or remote contact will not suffice to establish standing in a religious display case. See Valley Forge, 454 U.S. at 486-87.

For the reasons heretofore expressed, we hold that Suhre's lawsuit is concrete in character, and that it may proceed. We express no view, however, on the merits of Suhre's Establishment Clause claim. Demonstrating injury for standing purposes does not guarantee success in an Establishment Clause action any more than demonstrating physical injury guarantees success in a tort suit. The task of reviewing the merits of Suhre's claim is for the district court in the first instance. We thus remand this case to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED

15