Dott WASHEGESIC, as Next Friend
to Eric Pensinger, Plaintiff,

v.

BLOOMINGDALE PUBLIC SCHOOLS, a
Michigan Corporation, and the Bloom-
ingdale Public School Board, Defen-
dants.

No. 4:92–CV–146.

United States District Court,
W.D. Michigan, S.D.

Feb. 3, 1993.

Opinion and Order Amending Judgment
Feb. 19, 1993.

Susan M. Fall, Laurie L. Wightman,
Gemrich, Moser, Bowser, Fette, et al.,
Kalamazoo, MI, Paul J. Denenfeld, Legal
Director, Detroit, MI, for plaintiff.

David R. Melton, The Rutherford Insti-
tute, Grandville, MI, for defendant.

OPINION

BENJAMIN F. GIBSON, District Judge.

The case before the Court arises under
the First Amendment of the United States
Constitution. For at least thirty years, a
framed print of artist Warner Sallman's
*Head of Christ* has been displayed in the
hallway of Bloomingdale Secondary School.
Eric Pensinger, a high school senior, re-
quests that this Court order that the pic-
ture be removed because he feels it violates
the Establishment Clause of the First
Amendment.

Pending before the Court is plaintiff's
motion for a preliminary injunction. The
Court entertained oral argument on the
motion on January 11, 1993. At the hear-
ing, the Court agreed to permit the parties
to file post-trial briefs on the issues before
the Court. The Court also indicated that it
would consider the advisability of consoli-
dating the preliminary injunction hearing
with the trial on the merits pursuant to
Rule 65(a) of the Federal Rules of Civil
Procedure. The Court now determines
that it does not need additional testimony
or evidence to render a decision in the
case.[1] The Court therefore consolidates
the preliminary injunction hearing with the
trial on the merits and renders the follow-
ing final decision in accordance with Rule

---

1. Plaintiff has agreed that the case is ripe for
disposition. Defendants argued that it wished
to have the opportunity to present testimony
from expert witnesses such as psychiatrists and
psychologists about whether or not adolescents
in the seventh through twelfth grades can make
distinctions between school endorsement of a
religious idea, concept, or symbol and a school's

refusal to censor the same. The Court feels that
such testimony is unnecessary in light of what it
finds to be clear Supreme Court precedent. The
Court has, however, reviewed the expert affida-
vit and other material that defendant attached
to its supplemental brief. It has also reviewed
the deposition transcripts taken in the case.

52(a) of the Federal Rules of Civil Procedure.

## I.

The print which has caused the controversy at issue is of the figure Jesus of Nazareth who is revered as Jesus Christ, the son of God, by those who practice Christianity. There is no dispute that the picture hangs in the school hallway. In fact, defendants admit that it is bolted to the hallway wall. There is also no dispute that the figure in the picture is Jesus.[2] Furthermore, the parties agree that Bloomingdale Secondary School is both a middle school and a high school and that its student population includes children and adolescents attending the seventh through the twelfth grades.

The only factual dispute in the case concerns whether the print is "prominently displayed." The Court finds, after looking at a floor plan of the school and photographs of the picture, that its display is prominent. Located at an intersection of two main hallways, the picture hangs just outside the principal's office and near the gymnasium. Defendants have admitted that almost all students pass by the picture at least once a day. The dimensions of the portrait are approximately two feet by three feet, and it is in a gilt frame. The print is not part of a larger display of religious or historical figures.[3]

Eric Pensinger does not identify with the Christian faith and does not worship Jesus Christ or believe him to be a divine being. Affidavit of Eric Pensinger at ¶ 9. Pensinger avers that the display of the picture suggests to him that his school endorses Christianity and that its officials believe something is wrong with him because he does not subscribe to a Christian religion. Affidavit of Eric Pensinger at ¶¶ 10 and 11.

## II.

The First Amendment to the United States Constitution states, in part:

Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof, . . . .

This Amendment was introduced as part of the Bill of Rights. James Madison, who proposed these amendments to the newly formed House of Representatives, explained that their purpose was to "limit and qualify the powers of government" by prohibiting government from exercising its power in "those cases in which the government ought not to act, or to act only in a particular mode." "James Madison: A Bill of Rights Proposed," 3 *Annals of America* at 360 (1968) (excerpted from I *Annals of Cong.*, 424–50 (1789)). Madison believed that such limitations would guard against "the abuse of the executive," but he also hoped that it would guard against abuses that might be committed by "the community itself." *Id.* In other words, one of the objects of the Bill of Rights was to protect the minority from the tyranny of the majority.

In order to more fully understand the Establishment and the Free Exercise Clauses, it is instructive to examine a debate that occurred in the Commonwealth of Virginia some years prior to the ratification of the Constitution. During the 1784–85 session of the General Assembly, a bill was introduced into the Virginia House of Delegates which proposed that teachers of the Christian religion receive funding from the state. James Madison and Thomas Jefferson led the fight against this measure. In an eloquent pamphlet circulated to the citizenry, Madison argued that the reverence each person owed the Creator was a personal matter and that it was "the duty of every man to render to the Creator such homage, and such only, as he believes to be acceptable to him." Madison, "Memorial and Remonstrance Against Religious Assessments," 2 *The Writings of James Madison* 184 (ed. Gallard Hunt, 1901). True religion, Madison explained, did not require

---

**2.** The depictment does not portray any particular scene from the life of Christ, and Jesus is depicted without a halo or other sign of divinity.

**3.** The wall on which the picture is hung contains a painting of the school's mascot and some announcements; however, these seem to have no relation to the picture and do not add to or detract from the impression it makes.

government support in order to flourish. *Id.* at 187. Madison declared that in matters of religion it was proper "to take alarm at the first experiment on our liberties" (*Id.* at 185) and noted that "the same authority which can establish Christianity, in exclusion of all other religions, may establish with the same ease a particular sect ... in exclusion of all other sects." *Id.* at 186. Madison concluded that the establishment of religion would be contrary to "that generous policy, which, offering an asylum to the persecuted and oppressed of every nation and religion, promised a luster to our country...." *Id.* at 188. The bill was defeated and, instead, Virginia passed a statute of Religious Freedom, drafted by Thomas Jefferson, which served as a model for framers of the First Amendment.[4]

Throughout our history, the Supreme Court has many times been called upon to interpret the scope and breadth of the Establishment and the Free Exercise Clauses.[5] The Establishment Clause[6] has been found, by a long series of cases, not merely to prevent the government from establishing a particular religion but also to prohibit it from promoting religion over nonreligion. *See, e.g., Illinois ex rel. McCollum v. Board of Education,* 333 U.S. 203, 210–11, 68 S.Ct. 461, 464–65, 92 L.Ed. 649 (1948); *McGowan v. Maryland,* 366 U.S. 420, 442–43, 81 S.Ct. 1101, 1113–14, 6 L.Ed.2d 393 (1961); *School District of Abington Township v. Schempp,* 374 U.S. at 217, 83 S.Ct. at 1568–69. Perhaps the best explanation of this proscription appears in *Epperson v. Arkansas,* in which the Supreme Court held:

> Government in our democracy, state and national, must be neutral in matters of religious theory, doctrine, and practice. It may not be hostile to any religion or to the advocacy of no-religion; and it may not aid, foster, or promote one religion or religious theory against another or even against the militant opposite. The First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.

*Epperson v. Arkansas,* 393 U.S. 97, 103–04, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

The Supreme Court "has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Edwards v. Aguillard,* 482 U.S. 578, 583–84, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987). The Court has held that such vigilance is warranted because "families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family." *Id.* at 584, 107 S.Ct. at 2577. Furthermore, the Court has noted that students attending such schools are young and impressionable and that their attendance at the school is involuntary. *Id.*

To protect school children from violations of the Establishment Clause, the Supreme Court has invalidated the invocation of a nonsectarian prayer at a graduation ceremony (*Lee v. Weisman,* —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)), a statute authorizing a daily moment of silence for prayer in school classrooms (*Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985)); a statute requiring that a copy of the Ten Commandments be post-

---

**4.** Jefferson took great pride in this statute. By his own request, his epitaph reads: "Here was buried Thomas Jefferson, author of the Declaration of American Independence, the statute of Virginia for religious freedom, and father of the University of Virginia." Jefferson declared: "[B]y these, as testimonials that I have lived, I wish most to be remembered." "Thomas Jefferson: Virginia Statute of Religious Freedom," 3 *The Annals of America* at 53 (1968).

**5.** The First Amendment did not apply as a restraint against the states until it was made applicable to them by the passage of the Fourteenth Amendment although most states adopted similar state constitutional protections. *Everson v. Board of Education,* 330 U.S. 1, 13–14, 67 S.Ct. 504, 510–11, 91 L.Ed. 711 (1947).

**6.** Because this case is brought under the Establishment Clause, the Court focuses on its history. The Court bears in mind, however, that the Free Exercise and Establishment Clauses may overlap or even, at times, conflict. *See School District of Abington Township v. Schempp,* 374 U.S. 203, 222, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844 (1963).

ed in every classroom (*Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980)), a statute prohibiting the teaching of evolution in state-funded schools (*Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968)), a statute requiring that the Bible be read before class in public schools (*School District of Abington Township v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)), the requirement that a nonsectarian prayer be said at the beginning of the school day (*Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962)), and a school's practice of allowing religious instruction on school property during the school day (*Illinois ex rel. McCollum v. Board of Education,* 333 U.S. 203, 210–11, 68 S.Ct. 461, 464–65, 92 L.Ed. 649 (1948)). The Court has also invalidated several arrangements through which public money, directly or indirectly, contributed to religious education. *See, e.g., Grand Rapids School District v. Ball,* 473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985); *Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973).

■ The Supreme Court has articulated a three-prong test which must be applied to determine whether a particular action violates the Establishment Clause. *See Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). According to the *Lemon* test, a practice is constitutional only if it (1) reflects a clearly secular purpose; (2) has a primary effect that neither advances nor inhibits religion; and (3) avoids excessive government entanglement with religion. *Lemon,* 403 U.S. at 612, 91 S.Ct. at 2111; *see also Nyquist,* 413 U.S. at 773, 93 S.Ct. at 2965–66. The *Lemon* court noted that the First Amendment did not merely prohibit establishment of religion but that it also prohibited any law

"respecting" the establishment of religion. The Court cautioned that a law might be one "respecting" the establishment of religion even though no religion was ever actually established. *Id.*

### III.

■ Examination of the historical background of the Establishment Clause and of the Supreme Court's interpretation of it over time convinces this Court that the display of the portrait of Jesus in the public school is unconstitutional. Despite the defendants' recitation of an alleged secular purpose for display of the print, the Court finds that the true objective is to promote religion.[7] The Court also finds that the primary effect of the school's display of the picture is to advance religion in general and Christianity in particular.[8] Finally, the Court finds that the display of the picture excessively entangles government in religion.

This Court's decision is based on a close and careful reading of all relevant case law. Two cases in particular, however, support this holding and warrant a more detailed discussion. These cases are *Stone v. Graham* and *Lee v. Weisman.* In *Stone v. Graham,* the Supreme Court struck down a statute requiring the posting of the Ten Commandments in public school classrooms. The Supreme Court held that the purpose of posting the Ten Commandments was religious as the Commandments were "undeniably a sacred text in the Jewish and Christian faiths," and it added that the mere recitation of a secular purpose did not "blind [the Court] to that fact." *Stone,* 449 U.S. at 41, 101 S.Ct. at 194. The Court emphasized that the Commandments were not integrated into a particular course of study, and it found the effect of displaying the Commandments would be "to induce the schoolchildren to read, meditate upon,

---

7. Indeed, as plaintiff notes in his supplemental brief, school officials were not able to assert *any* purpose behind the original decision to display the picture, and they stated during deposition that the only reason for not taking it down was because they wished to avoid censorship. *See* Hoke Deposition at 23, 54; Tuinstra Deposition at 7, 10; Dickerson Deposition at 15.

8. If in no other way, the display of the portrait advances Christianity because it exposes students to the fundamental figure of the Christian religion without providing them access to portrayals of leaders, prophets, or divinities of other religions or to depictions of advocates of nonreligion.

perhaps to venerate and obey" them. *Id.* at 42, 101 S.Ct. at 194.

Like the Ten Commandments, the portrait of Jesus serves a primarily religious purpose. Jesus Christ is, if anything, more fundamental to the doctrine of Christianity than the Ten Commandments are to either Judaism or Christianity. Defendants' declaration that the picture is displayed as an artistic work or that it is a depiction of a historical figure does not blind this Court to the religious message necessarily conveyed by the portrayal of one who is the object of veneration and worship by the Christian faith. As was the case with the Ten Commandments in *Stone*, the picture is not placed in a historical, ethical, or artistic context. It stands alone on the school wall where its effect, if any, is to make children look at, meditate upon, and perhaps revere Jesus Christ. "However desirable this might be as a matter of private devotion, it is not a permissible state objective under the Establishment Clause." *Stone*, 449 U.S. at 42, 101 S.Ct. at 194.[9]

*Lee v. Weisman* is the Supreme Court's latest Establishment Clause Opinion.[10] In *Lee*, the Supreme Court declared unconstitutional a school's decision to have a prayer delivered at a graduation ceremony despite the fact that the prayer was nonsectarian. The Court explained that certain acts which "to most believers may seem nothing more than a reasonable request that the nonbeliever respect their religious practices, in a school context may appear to the nonbeliever or dissenter to be an attempt to employ the machinery of the State to enforce a religious orthodoxy." *Lee*, —— U.S. at ——, 112 S.Ct. at 2658. The Court found that the school's supervision and control of a graduation ceremony placed public and peer pressure upon students to, at least, respect the religious practice embodied by the prayer. The Court indicated that such pressure, though subtle and indirect, could "be as real as any overt compulsion." *Id.* The Court further found that adolescents are more susceptible to pressure to conform than are mature adults. *Id.*, —— U.S. at ——, 112 S.Ct. at 2658–59.

The facts surrounding the graduation ceremony at issue in *Lee* gave the imprimatur of school sponsorship and approval of the prayer invoked therein. Similarly, in the case before this Court, the fact that a portrait of Jesus hangs in the school's hallway implies school endorsement of the picture. Students may feel pressure, if not to believe in the teachings of Jesus, at least to suppress any disagreement they might have with the Christian religion. Many of the students attending the Bloomingdale Secondary School are younger than students participating in the graduation ceremony at issue in *Lee* and thus are even more susceptible to government and peer pressure. In *Lee*, the prayer was invoked only once a year in the context of a ceremony which students were not compelled to attend; whereas, Pensinger and his classmates are required to attend school, at least until the age of 16, and must pass by the picture every day.

Defendants argue that *Lee* is distinguishable because it involved a ceremony in which students were asked to bow their

**9.** Defendants argue that this case is distinguishable from *Stone* because the statute at issue in that case required that the Ten Commandments be put up while this case involves a decision about whether a picture, which has been a fixture at the school for thirty years, must come down. Defendants claim that there is a vast difference between the *act of posting* and the *act of removing*. Defendants' Supplemental Brief at 14–15. Defendants support their argument by citing *Board of Education v. Pico*, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982) (plurality opinion). In *Pico*, the Supreme Court expressed less reluctance about prohibiting schools from removing books from libraries because of their content than it did from becoming involved in routine decisions made by the school about what books to acquire. The case thus turned upon the Free Speech Clause and not the Establishment Clause and is completely distinguishable from this case.

This Court's analysis does not depend upon the length of time the picture has hung on the school wall. The Court cannot countenance a constitutional violation simply because it is longstanding.

**10.** Although the School and the United States Government, acting as *amicus*, invited the Supreme Court to reconsider its decision in *Lemon*, the Court declined, but the majority Opinion did not discuss the traditional three-prong test when analyzing *Lee*.

heads in a state-conducted "religious exercise." Because students at Bloomingdale are not required by rule or custom to observe any particular practice in connection with the picture, defendants assert that this case does not involve such a religious exercise and that it is therefore not controlled by *Lee.* The Court does not believe that the concerns voiced by the Supreme Court about the impressionability of school age students [11] and about their susceptibility to coercion from government and peers is limited to situations involving religious exercises. In the opinion of this Court, any action of the state which, either directly or indirectly, conveys that religion, or a particular type of religion, is more accepted, respected, or tolerated than another value system has the potential to subtly coerce students to acquiesce to the promoted religion. The Court finds that the school's display of the portrait of Jesus may well have such a coercive influence and that it is therefore unconstitutional under the rationale of *Lee.*

## IV.

While the Court finds that the cases discussed above are dispositive of the outcome of this issue, it feels compelled to discuss the arguments defendants have raised at the January 11 hearing and in pre- and post-trial briefs. The Court finds none of these arguments persuasive.

First, defendants assert that "mere exposure" to materials objected to on religious grounds is not unconstitutional and that the school should not have to "sanitize" its building of every vestige of religious material. The Court agrees with defendants; however, there is a marked contrast between requiring that the school dispel every trace of objectionable material and ordering that it remove, from prominent display, the portrait of the leading figure of the Christian religion.

Defendants' second argument is that the picture is not inherently religious. While defendants admit that Jesus conveys a religious message to Christians, they contend that "to the Jew he is generally recognized as a first century rabbi. . . .; to the Moslem he is generally recognized as a prophet; to a Buddhist, an enlightened one; and to nearly all he is recognized as a historical figure and moral leader." Defendants' Brief at 9.[12] To some degree, the meaning of anything witnessed, heard, or experienced is subjective. However, shared culture and common media exposure have invested certain objects and events in our society with a universal meaning, although

**11.** Defendants maintain that the Supreme Court "has rejected the impressionability argument for secondary school students." Defendants' Supplemental Brief at 15. Defendants' conclusion is based upon *Westside Community Education v. Mergens* in which the Supreme Court stated: "We think that secondary school students are mature enough and are likely to understand that a school does not endorse or support student speech that it merely permits on a nondiscriminatory basis." *Board of Educ. of Westside Community Schools v. Mergens,* 496 U.S. 226, 250, 110 S.Ct. 2356, 2372, 110 L.Ed.2d 191 (1989). The Supreme Court has obviously not "rejected" the impressionability argument for secondary school students since it discussed impressionability at length in *Lee,* a case which was decided after *Mergens.*

In *Mergens,* the Supreme Court discussed students' rights to attend extra-curricular religious clubs which met under the same conditions as nonreligious clubs. The Court upheld the Equal Access Act, which prohibits public secondary schools with "limited open forums" from dis-

criminating against students who wish to conduct a meeting within that forum if that discrimination is based upon religious, political, philosophical, or other content of the speech at such meetings. The Court noted that the Act specifically limits participation by school officials and requires that the voluntary meetings be held during "noninstructional time." *Id.* at 251, 110 S.Ct. at 2372. The Court concluded that while there was a possibility of peer pressure, there was "little if any risk of state endorsement or coercion." *Id. Mergens* is factually distinct from the case before this Court as this case does not concern *student speech* nor is the wall upon which the picture hangs a "limited public forum."

**12.** By citing Jesus' role in religions other then Christianity, defendants may well be trying to show that Jesus is important, if not central, to all religions. Even if the Court were to assume that this dubious proposition were true, defendants' argument is to no avail as the Establishment Clause prohibits the fostering of religion, in general, over nonreligion.

there may be a rare exception.[13] The Court finds that any reasonable observer would find that the picture of Jesus transmits a religious message.[14]

Defendants' third argument is that the role of the school is to act with "benevolent neutrality" and that if they removed the picture they would be censoring religious expression. A similar argument was recently made to the Seventh Circuit in defense of a public school's decision to allow the distribution of Gideon Bibles in the school. The Seventh Circuit determined that the argument "distorted the facts" and "misconstrued the law." *Berger v. Rensselaer Central School Corporation*, 982 F.2d 1160, 1165 (7th Cir.1993). The Seventh Circuit first noted that defendants' free speech argument depended upon the presumption that the school was not a state actor while its tacit approval of Bible distribution on its premises carried the imprimatur of state involvement. Similarly, in this case, defendants repeatedly express reluctance to "censor" the picture while ignoring the fact that defendants, themselves, are responsible for its continued display.[15]

In *Berger*, the Seventh Circuit also held that defendants were wrong to assume that the First Amendment interest in free expression "automatically trumps" the First Amendment prohibition on state-sponsored religious activity. *Id.* at 1168. The court reviewed other cases in which activities were found to violate the Establishment Clause and noted that invalidating such activities necessarily infringed on free speech and free exercise rights. The Seventh Circuit held that in such cases expressive activity "may be stifled in the government's vigilance to remain neutral toward religion." *Id.* at 1168 (internal citations omitted). Relying on the rationale of *Berger*, the Court finds that defendants' concerns about free speech and free exercise are not adequate reason to allow the picture to remain.[16]

Defendants contend that the Court should examine this case under the Supreme Court's rulings in "religious display cases" which discuss the extent to which the state can exhibit religious symbols on public property. Even if the Court were to determine that this case should be governed by the jurisprudence of the religious display cases instead of by the long line of carefully reasoned public school opinions, defendants' argument would be to no avail. In one of the Supreme Court's most recent public display cases, *County of Allegheny v. Greater Pittsburgh ACLU,* the Court held that the question of the constitutionality of government use of an object with religious meaning turns on an inquiry into whether display of the object has the effect of endorsing religion. *Allegheny County*

---

13. Defendants might just as well argue that a crucifix to the nonbeliever is simply a work of art.

14. In *Stone v. Graham* discussed above, the Supreme Court invalidated a law requiring the posting of the Ten Commandments despite the fact that it was arguable that nonbelievers might view the Commandments as a useful moral code.

15. Defendants attempt to minimize their relationship to the picture by insisting that it was placed in the school by an "unknown donor." While the original placement of the picture may have been at the instigation of someone outside the school, there is no dispute that the picture is now the property of the school and that the hallway in which it is placed is under the school's direct control and ownership.

16. Defendants make the related argument that the school is a public forum. The school building is clearly not a traditional public forum open to all persons who might wish to take advantage of it. Defendants contend, however, that the school is a limited public forum and that, under the rationale of *Mergens* and *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), it should be open to the expression of all ideas, even religious ones. This case, however, is factually distinguishable from both *Mergens* and *Widmar* because they involved the free speech and exercise rights of individual students, not of the school itself.

Defendants also argue that the school should be a "marketplace of ideas." However laudable this goal may be in theory, it is clear that, in practice, the school has "cornered the market" on all ideas expressed through the medium of the hallways. Defendants control the content of what is placed on the school walls. Defendants admit that the school does not allow vulgarities, offensive materials (racially), slander, or expression that is not "of good quality" to be displayed on the wall. Defendants' Supplemental Brief at 12.

*v. Greater Pittsburgh ACLU,* 492 U.S. 573, 595, 109 S.Ct. 3086, 3102, 106 L.Ed.2d 472 (1989). The Court found that to answer this inquiry a court must determine "what viewers may fairly understand is the purpose of the display." *Id.* The Court held that this factor depended, in turn, upon the context in which the contested object appears. *Id.* In this case, the prominence of the picture in the hallway, the fact that it is not part of a larger display, and the fact that it is not incorporated into a class, lecture, or other context has the effect of endorsing religion in general and Christianity in particular. Therefore, even under the Supreme Court's holiday display jurisprudence, the portrait must be removed.

Finally, defendants argue that there is no "absolute" separation of church and state. Defendants' Supplemental Brief at 15 (citing *Lynch v. Donnelly,* 465 U.S. 668, 673, 104 S.Ct. 1355, 1359, 79 L.Ed.2d 604 (1984)). This Court agrees that cases may arise in which the state's involvement with religious objects is so peripheral that it passes Constitutional muster, but it finds that this is not such a case. As discussed above, the purpose of the Establishment Clause and the history of its interpretation compel this Court to find that the display of the portrait in question is unconstitutional.

### V.

For the reasons stated above, this Court finds that the display of the portrait of Jesus is an unconstitutional violation of the Establishment Clause. This is a final ruling on the merits of the case. In deference to the defendants' request that they be allowed a reasonable time for appeal to seek a stay from the Sixth Circuit, the Court delays enforcement of the injunction. Accordingly, the portrait of Jesus Christ shall be removed from the wall of the Bloomingdale Secondary School no later than March 1, 1993.

### INJUNCTION and FINAL JUDGMENT

At a session of the Court held in and for said District and Division, in the City of Grand Rapids, Michigan, this 3rd day of February, 1993.

In accordance with the Opinion dated February 3, 1993,

IT IS HEREBY ORDERED that defendants Bloomingdale Public Schools and Bloomingdale Public School Board are enjoined from displaying the print of artist Warner Sallman's *Head of Christ* in the Bloomingdale Secondary School.

IT IS FURTHER ORDERED that the picture be removed no later than March 1, 1993.

IT IS SO ORDERED.

### MEMORANDUM OPINION AND ORDER

At a session of the Court held in and for said District and Division, in the City of Grand Rapids, Michigan, this 19th day of February, 1993.

Pending before the Court are defendants' Motion for New Trial, Motion to Alter or Amend Judgment, Motion for Stay of Execution of Judgment, and Motion for Expedited Consideration. The Court conducted a telephone status conference on February 19, 1993, in relation to this motion. The Court, after giving due consideration to the arguments of counsel, reaffirms its ruling of February 3, 1993, see page 559. However, the Court recognizes that this matter will most likely be appealed and further recognizes that the defendants assert that removing the picture may result in harm to the picture that cannot be undone by a subsequent judgment of the Court of Appeals. For these reasons, the Court issues the following order:

IT IS HEREBY ORDERED that defendants Bloomingdale Public Schools and Bloomingdale Public School Board's motion for expedited consideration is HEREBY GRANTED.

IT IS FURTHER ORDERED that defendants' motion for a new trial is HEREBY DENIED.

IT IS FURTHER ORDERED that defendants' motion for a stay of execution of judgment is HEREBY DENIED.

IT IS FURTHER ORDERED that defendants' motion to alter or amend the Court's Final Judgment is HEREBY DENIED.

IT IS FURTHER ORDERED that the Court will amend its judgment pending appeal to the extent that defendants have the option either of removing the print of artist Warner Sallman's *Head of Christ* currently displayed in the Bloomingdale Secondary School *or* of completely covering the picture with an opaque material such that the figure in the picture cannot be seen from any direction.

IT IS FURTHER ORDERED that the removal or the covering of the picture should be done by March 1, 1993.

IT IS FURTHER ORDERED that the option of covering the picture is meant only as interim relief pending the appeal and that should defendants choose not to exercise their right to appeal, the picture shall be removed by March 1, 1993, as originally ordered.

IT IS SO ORDERED.