Dott **WASHEGESIC**, as next friend of Eric Pensinger; Eric Pensinger, with Dott Washegesic as next friend of, Plaintiffs–Appellees,

v.

**BLOOMINGDALE PUBLIC SCHOOLS**, a Michigan Corporation; Bloomingdale Public School Board, Defendants–Appellants.

No. 93–1248.

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1994.

Decided Sept. 6, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 18, 1994.

---

Laurie L. Wightman, Susan M. Fall (briefed), Gemrich, Moser, Bowser, Fette & Lohrmann, Kalamazoo, MI, Paul Denenfeld (argued), Detroit, MI, for plaintiffs-appellees.

David R. Melton (argued and briefed), Grandville, MI, for defendants-appellants.

Before: MERRITT, Chief Judge; NORRIS, Circuit Judge; and GUY,* Senior Circuit Judge.

---

* The Honorable Ralph B. Guy, Jr. assumed senior status on September 1, 1994.

MERRITT, Chief Judge, delivered the opinion of the court. RALPH B. GUY, Jr., Senior Circuit Judge (pp. 684–85), delivered a separate concurring opinion. NORRIS, Circuit Judge, concurred in both the opinion of the court and the separate concurrence.

MERRITT, Chief Judge.

The defendants appeal an injunction from the district court requiring them to remove a portrait of Jesus Christ that has been hanging alone in the hallway of the Bloomingdale Secondary School for the last thirty years. Plaintiff, a student at the school, filed suit alleging that the display of the portrait violated the Establishment Clause of the First Amendment. After the district court's decision, plaintiff graduated. The issues presented are whether the appeal should be dismissed as moot and whether the display of the portrait violates the Establishment Clause.

The facts of the case are undisputed. Eric Pensinger, then a senior, brought suit to remove a copy of Warner Sallman's famous portrait, "Head of Christ," from being displayed in a hallway outside the gymnasium and the principal's office of the Bloomingdale Secondary School. Bloomingdale is a small rural community near Kalamazoo, Michigan. The portrait, originally donated to the school, is not part of a group of paintings nor is it used in conjunction with any class or educational program. Nearby in the same hallway are trophy cases, a painting of the school mascot and a bulletin board, but as Judge Gibson noted, "these seem to have no relation to the picture and do not add to or detract from the impression it makes." *Washegesic v. Bloomingdale Pub. Sch.,* 813 F.Supp. 559, 560 n. 3 (W.D. Mich.1993). The judge held that the portrait violated the Establishment Clause; and in order to avoid damage to the portrait which is bolted to the wall, he allowed the picture to be covered

with a cloth pending the outcome of this appeal.

## The Mootness Claim

Eric Pensinger graduated on June 3, 1993. The defendants argue that there is no longer a case or controversy because plaintiff has no stake in the outcome of the case. Defendants cite cases that a plaintiff's graduation can moot a claim against a school, *Board of School Comm'rs of Indianapolis v. Jacobs,* 420 U.S. 128, 129, 95 S.Ct. 848, 849–50, 43 L.Ed.2d 74 (1975) and *Ahmed v. University of Toledo,* 822 F.2d 26 (6th Cir.1987); but these cases are not on point. In *Jacobs,* plaintiffs challenged the constitutionality of school rules which regulated the student newspaper. The rules no longer applied to the plaintiffs after graduation. The Supreme Court dismissed the appeal when it learned at oral argument that all the plaintiffs had graduated. *Jacobs,* 420 U.S. at 129, 95 S.Ct. at 849–50. In *Ahmed,* foreign students challenged the constitutionality of a university policy requiring them to carry health insurance. By the time the case reached the appellate level, the plaintiffs had graduated or dropped out of school permanently and the court dismissed the case as moot. *Ahmed,* 822 F.2d at 28.

In *Jacobs* and *Ahmed* the plaintiffs ceased to have any interest in the challenged policy and could not be affected by it after they were no longer students. The rules could no longer harm them. Here, conversely, the portrait of Jesus affects students and non-students alike. Status as a student is not necessary for standing in such cases. Pensinger still visits the school and will confront the portrait whenever he is in the hall. His girlfriend is a student, and he attends sporting events, dances and other social functions in the gym and at the school. Thus, plaintiff claims that this case is not moot because he continues to suffer actual injury.[1]

1. Plaintiff originally alleged these facts, arguing that this case is not moot because it is "capable of repetition yet evading review." Two criteria must be satisfied to apply this exception to the mootness doctrine. Plaintiff must show that the duration of the dispute is too short to be fully litigated and that there is a reasonable expectation that the same plaintiff will be subjected to the same action again. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975); *Ahmed,* 822 F.2d at 28. The instant dispute does not "evade review" because students attend the secondary school for six years (grades 7–12), long enough for a suit to

Mootness is "the doctrine of standing set in a time frame." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (citation omitted). The issue is whether plaintiff has standing to continue this appeal. To demonstrate standing a plaintiff must show an "actual injury" caused by defendant's conduct which can be remedied by a court. *City Communications, Inc. v. Detroit,* 888 F.2d 1081 (6th Cir.1989). As in many First Amendment cases, the injury can be non-economic. *Hawley v. City of Cleveland,* 773 F.2d 736 (6th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986). The use of governmental authority to encourage a sectarian religious view is a sufficient injury if directed toward the plaintiff.

In *Hawley,* citizens challenging the lease of space for a chapel at the Cleveland airport were denied taxpayer standing but were granted standing for their actual injury when they used the airport. *Id.* at 740. The injury which conferred standing was the "impairment of their beneficial use of a public facility which they frequently use." *Id.* In this case, similarly, the portrait affects in some measure Pensinger's use of the school. His graduation does not end the case because the portrait does not affect students only—it potentially affects any member of the public who attends an event at the school. A member of the PTA or a member of the public would have standing if she attended events in the gymnasium and took the portrait as a serious insult to her religious sensibilities. *Cf. Jager v. Douglas County School District,* 862 F.2d 824, 826 n. 1 (11th Cir.) (graduated student and father (individually) challenging prayer at high school football games permitted to "continue this suit … as people who attend the football games"), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). The relevant inquiry in this case is similar to that in any "public-facility" case: whether the individual plaintiff uses the facility and suffers actual injury. *Hawley,* 773 F.2d at 740 (discussing *ACLU v. Rabun County,* 698 F.2d 1098, 1108 (11th Cir.1983)

(plaintiffs granted standing to challenge cross displayed in Georgia state park because use was "conditioned upon the acceptance of unwanted religious symbolism")).

The cases are in some conflict and the doctrine is somewhat confused. Although it may be true that psychological harm alone is not always a sufficient injury for standing purposes when contact is indirect, *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 485, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982), " 'unwelcome' direct contact with the offensive object is enough." *Harvey v. Cobb County,* 811 F.Supp. 669, 674 (N.D.Ga.) (lawyer had standing based on regular contact with Ten Commandments posted in courthouse), *aff'd without opinion,* 15 F.3d 1097 (11th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994); *see also Murray v. Austin,* 947 F.2d 147, 151 (5th Cir.1991) (citizen had standing based on "exposure" to city insignia which contained cross), *cert. denied,* — U.S. ——, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992). Here, Pensinger's contact with the school and the portrait is direct.

Defendants rely heavily on the language in *Valley Forge* that the "psychological consequence presumably produced by observation of conduct with which one disagrees" is not sufficient to confer standing. *Valley Forge,* 454 U.S. at 485, 102 S.Ct. at 765. The court in *Rabun County* discussed the distinction between this broad language in *Valley Forge* and the other Establishment Clause cases in which contact with the offensive object did constitute a sufficient injury. *Rabun County,* 698 F.2d at 1104–09. The outcome depends on the directness of the harm. *Valley Forge* was a citizen's suit. Plaintiffs were members of an organization challenging a government action they learned about through a news release. Their grievance had a vicarious quality. They objected in a general way as citizens. They had no direct contact with the dispute, and their minor "psychological injury" from being offended did not give them standing. *Id.* (discussing *Valley Forge* ). Here, as in *Rabun County,*

be tried and resolved. *See Ahmed,* 822 F.2d at 28 (four years deemed long enough for students

to bring challenge—evading review doctrine not applied).

*Harvey* and *Murray*, plaintiff has continuing direct contact with the object at issue. His grievance is not remote, vicarious or generalized as in *Valley Forge*. In *ACLU v. St. Charles*, the court brought up another factor to distinguish generalized from specific harm: "Maybe it ought to make a difference if (as here) a plaintiff is complaining about the unlawful establishment of a religion by the city, town, or state in which he lives, rather than about such an establishment elsewhere." 794 F.2d 265, 268 (7th Cir.), *cert. denied,* 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986). The practices of our own community may create a larger psychological wound than someplace we are just passing through.

In *Jacobs* and *Ahmed,* the policies affected certain students *because and only because* they were students. Upon leaving school, the alleged injury ceased to exist. Here, any parent, employee or former student who uses the school facilities and suffers actual injury would have standing to sue. This case is not moot.

### The Merits

■ In a well-reasoned decision, Judge Gibson held that the school's display of the portrait violated the Establishment Clause. To satisfy the requirements of the Establishment Clause, the district court applied the test set forth in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The government practice at issue must 1) clearly reflect a secular purpose; 2) have a primary effect that neither inhibits nor advances religion; and 3) avoid excessive government entanglement with religion. *Id.* at 612, 91 S.Ct. at 2111.

■ The display here fails all three prongs of *Lemon.* The portrait is moving for many of us brought up in the Christian faith, but that is the problem. The school has not come up with a secular purpose. The portrait advances religion. Its display entangles the government with religion.

The district court pointed to several precedents. *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (school's posting of Ten Commandments improper because they are undeniably religious and because they were not integrated into any course of study); *Lee v. Weisman,* — U.S. —, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (prayer at a graduation ceremony struck down in part because of the school's supervision and control of the ceremony). As in *Stone,* the portrait of Jesus is not integrated into any course of study, and like *Lee,* the school controls the picture.

These cases and *Stein v. Plainwell Community Schools,* 822 F.2d 1406 (6th Cir. 1987), set out the general principles that we apply here. In *Plainwell Community Schools,* after analyzing *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983) (upholding "non-sectarian" legislative invocations), we rejected school invocations and benedictions "framed and phrased so that they 'symbolically place the government's seal of approval on one religious view'—the Christian view" and which "invoke . . . Jesus as the Savior." 822 F.2d at 1410. The support of sectarian prayers and pictures or similar religious acts and symbols by public schools violates the accommodation we made long ago with the religious history and traditions of our country. That accommodation requires "a neutral state designed to foster the most extensive liberty of conscience compatible with a similar or equal liberty for others." *Id.* at 1408.[2] The school has violated that principle.

2. In *Plainwell Community Schools* we explained the principle of accommodation as follows:

From the beginning of the colonial period to the present, American churches have taken their various religious differences seriously, and under the Free Exercise and Establishment clauses taken together, we have generally accepted and settled on an accommodation: The concept of the equal liberty of conscience is our guiding principle. In our national and community life, we can never be sure whether our particular religious, sectarian and moral convictions will be in the majority or the minority. So as a diverse people we have rejected the notion of a confessional state that supports religion in favor of a neutral state designed to foster the most extensive liberty of conscience compatible with a similar or equal liberty for others. To those who act or argue against this principle of equal liberty of conscience on grounds that their duty is to use the state in support of their particular beliefs, we answer that we cannot expect others to accept an inferior liberty. To those who say that the

The defendants argue that the picture has meaning to all religions and that it is not inherently a symbol of Christianity. The case would be different if the school had placed representative symbols of many of the world's great religions on a common wall. But Christ is central only to Christianity, and his portrait has a proselytizing, affirming effect that some non-believers find deeply offensive. Though the portrait, like school prayers and other sectarian religious rituals and symbols, may seem "de minimis" to the great majority, particularly those raised in the Christian faith and those who do not care about religion, a few see it as a governmental statement favoring one religious group and downplaying others. It is the rights of these few that the Establishment Clause protects in this case.

■ Finally, the defendants also argue weakly that the school hallway is a limited public forum. Judge Gibson properly rejected this argument and treated the case under standard Establishment Clause case law. The hallway is not a limited public forum because the school maintains the right to control what is posted there and does not offer space to other religions and causes. The focus must be on the preference of individuals, not the preference of the school itself. *Board of Educ. of Westside Community Sch. v. Mergens,* 496 U.S. 226, 250, 110 S.Ct. 2356, 2371–72, 110 L.Ed.2d 191 (1990) (there is a "crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect"). The school's ownership and display of the portrait endorses the Christian religion and promotes it exclusively.

For these reasons, the defendants' motion to vacate, remand and dismiss is **DENIED.**

The order of the district court requiring defendants to remove the portrait of Jesus is **AFFIRMED.**

RALPH B. GUY, Jr., Senior Circuit Judge, concurring.

Although I have labeled my participation in this decision a concurrence, as will readily become apparent, it is much more akin to a dissent. It is a concurrence only because I believe a case can be made that this result is dictated by the decision in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), as Judge Merritt concludes. I also join in the opinion following the old adage that the best way to get rid of bad law is to rigidly enforce it.[1]

As the majority notes, the "offending" religious artifact here is a reproduction of a famous portrait.[2] Copies of this painting can be found all over the United States as well as abroad. Most persons have seen a copy dozens of times in various and sundry locations, probably without paying it any particular heed. It no more conveys the notion of the "establishment" of a religion than a statue of Robert E. Lee in a park suggests we should dissolve the Union.

It has hung on the school wall for 30 years, and the only result that is evident is that the school population has become more religiously diverse over time as has our entire Country. For me at least, a discussion of "psychological damage" resulting from viewing this picture does implicate an "establishment"—but not one of religion. What is established is a class of "eggshell" plaintiffs of a delicacy never before known to the law. I can well understand that someone (perhaps this plaintiff) in some sense could be offended by this portrait, but "injured" is another matter. In this multicultural world that

---

principle of equal liberty of conscience has the effect of rejecting the absolute nature of their religious beliefs, we reply that if any principle can be agreed to, it can only be that of an equal liberty of conscience for all. 822 F.2d at 1408.

1. In his inaugural address on March 4, 1869, President Ulysses S. Grant said: "I know no method to secure the repeal of bad or obnoxious laws so effective as their stringent execution."

2. Is there no room under the Constitution for a famous portrait to stand on its own as a work of art? Some of the most famous and now priceless paintings in the world depict religious scenes, many of them using Christian figures and symbols. According to an article in the March 3, 1994, Chicago Sun–Times, Sallman's "Head of Christ" has been reprinted 500 million times.

young persons are entering today, I would hope our schools are turning out people with a little more resiliency than is evidenced here.

Earlier I said that "a case can be made" that the result here is dictated by *Lemon,* but that is as far as I would want to go with it. *Lemon* is much criticized and appears to be applied differently from case to case, or not applied at all. If the Supreme Court ever gets around to abandoning *Lemon,* and there is certainly significant impetus within the Court to do so, I would hope the new test would have a "de minimis" prong to it.

I do not mean to suggest that the "appropriateness" of this picture in the school is not a legitimate issue for discussion, but it ought to be resolved within the school context. In this age, this picture hanging alone might reflect some insensitivity to the diversity that is now America. But let us tackle the problem with some good old Yankee ingenuity—lobby for a course in comparative religions; put a picture of Martin Luther King on the wall; form a Zen Buddhist club; wear a t-shirt proclaiming the virtues of agnosticism; but, if I am permitted to use the expression, for heaven's sake, stay out of the courthouse and quit trivializing the Constitution!