70 F.3d 931
 105 Ed. Law Rep. 43
 Alan KUNSELMAN; Martha Kunselman; Craig Kunselman, minor;
Curtis Kunselman, minor; Cara Kunselman, minor,
Plaintiffs-Appellants,
v.
WESTERN RESERVE LOCAL SCHOOL DISTRICT, Board of Education,
Defendant-Appellee.
 No. 94-3603.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 16, 1995.
Decided Dec. 12, 1995.
 
 Robert L. York, Cortland, OH, for plaintiffs-appellants.
 Diane Politi (argued and briefed), Office of Mahoning County Prosecutor, Youngstown, OH, for defendant-appellee.
 Before: MERRITT, Chief Judge; KENNEDY, Circuit Judge; JOINER, District Judge.*
 MERRITT, Chief Judge.
 
 
 1
 Plaintiffs appeal the District Court's grant of summary judgment for defendant in this action seeking declaratory and injunctive relief for alleged violations of the Establishment Clause. The alleged violation of the Establishment Clause is that the school's athletic mascot is a "Blue Devil" and that the athletic uniforms, diplomas, certificates of achievement and the gymnasium wall all bear the likeness of a "Blue Devil." The issue before us is whether the principal or primary effect of the use of the "Blue Devil" mascot is to advance or inhibit religious beliefs in the eyes of a reasonable observer. We, as did the District Court, assume that Satanism or the Church of Satan is a "religion" for purposes of summary judgment.
 
 
 2
 The "Blue Devil" mascot was adopted by the Western Reserve Local School District during the 1948-49 school year. Prior to that time, the school had no mascot, but its colors were blue and white. The "Blue Devil" mascot was copied from other schools that had the same mascot, most notably Duke University, which then had winning athletic teams. Apparently the Duke "Blue Devils" were named for an elite corps of French alpine soldiers who fought in World War II wearing blue berets and going by the name the French "Blue Devils."
 
 
 3
 All three of the Kunselman children attend schools within the Western Reserve Local School District. They first expressed their opposition to the mascot in 1991 at a School Board meeting. Afterward, the School Board sent a survey to all households on its newsletter mailing list and also allowed students in grades 9-12 to vote both on the retention of the "Blue Devils" mural in the gymnasium and on the retention of the "Blue Devils" as a mascot. The results of the student vote were 20 to 1 in favor of retaining both the mural and the mascot: 211 students voted in favor of retaining the mascot, and only 8 were opposed; 208 students voted against removing the mural, and 10 were in favor of its removal. The community at large vote was as follows: 414 voted to retain the mascot, and 88 were opposed to its retention; 384 were against removing the mural from the gymnasium wall, while 112 were in favor of its removal. Based on these results, the School Board decided to retain both the mascot and the mural.
 
 
 4
 An affidavit from Ivan Hoyle, senior class president when the mascot was adopted, is included in the record. Mr. Hoyle stated that the mascot has always been perceived as simply a school mascot with an entirely secular purpose and effect--to provide a menacing type of figure for sporting events.
 
 
 5
 In addition, there are numerous affidavits from members of the school board, the athletic director, and the superintendent of the district. They say that the mascot is considered secular and not religious, and is merely a "menacing type of figure for athletic activities."
 
 
 6
 In a well-reasoned decision, Judge Dowd held that the school's use and display of a "Blue Devil" as their mascot did not violate the Establishment Clause. The District Court applied Lemon v. Kurtzman in which the Supreme Court formulated a three prong test to analyze Establishment Clause cases, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The government practice at issue must clearly reflect a secular purpose, have a primary effect that neither inhibits nor advances religion, and avoid excessive government entanglement with religion. Id. at 612-13, 91 S.Ct. at 2111. Both parties focus their arguments on the second prong of the test, i.e., that the "principal or primary effect must be one that neither advances nor inhibits religion" in order to uphold the governmental activity. Id. at 612, 91 S.Ct. at 2111.
 
 
 7
 The Supreme Court reviewed the "effects test" as it relates to the display of religious symbols on government property in Allegheny County v. Greater Pittsburgh ACLU, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989):
 
 
 8
 ... when evaluating the effect of government conduct under the Establishment Clause, we must ascertain whether "the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the non-adherents as a disapproval, of their individual religious choices." Accordingly, our present task is to determine whether the display of the creche and the menorah, in their respective "particular physical settings," has the effect of endorsing or disapproving religious beliefs.
 
 
 9
 Id. at 597, 109 S.Ct. at 3103 (citations omitted). Both the content and the context of the religious display must be analyzed, Washegesic v. Bloomingdale Public Schools, 33 F.3d 679, 683-84 (6th Cir.1994), and, the constitutionality of a display's effect must be judged according to the standard of a reasonable observer, Allegheny, 492 U.S. at 620, 109 S.Ct. at 3115.
 
 
 10
 No reasonable person would believe that the "principal or primary effect" of the use of the "Blue Devil" mascot and likeness is to "advance or inhibit religion." Its principal and primary purpose and effect is to serve as a secular symbol for athletic activities.
 
 
 11
 On the reasonable observer issue, the District Court's view is correct: "the fact that plaintiffs are personally offended by the mascot is insufficient to establish a First Amendment violation in the context of the facts of this case." No reasonable observer would believe that the use of the devil as a mascot is meant to endorse or disapprove any religious choice. No reasonable person would think that the school authorities here are advocating Satanism anymore than the French alpine soldiers, Duke University or numerous other schools are encouraging worship of the devil when they use the name and symbol.
 
 
 12
 In Washegesic v. Bloomingdale Public Schools, 33 F.3d 679 (6th Cir.1994) we held that the display of a portrait of Christ, a copy of Warren Sallman's "Head of Christ," in a hallway outside the gymnasium violated the Establishment Clause:
 
 
 13
 Though the portrait, like school prayers and other sectarian religious rituals and symbols, may seem "de minimis" to the great majority, particularly those raised in the Christian faith and those who do not care about religion, a few see it as a governmental statement favoring one religious group and downplaying others. It is the rights of these few that the Establishment Clause protects in this case.
 
 
 14
 Id. at 684. Plaintiffs in the instant case seek to analogize the portrait of Christ in the hallway outside the gymnasium to the mural showing the "Blue Devil" on the gym wall. It is true that the Establishment Clause often protects the rights of the few, as we stated in Washegesic, but it is also true that the few must have a reasonable view of the effect of the picture or symbol. In this case, the perception of the usage of the "Blue Devil" mascot as an establishment of religion is not reasonable, and therefore this use does not violate the Establishment Clause.
 
 
 15
 The judgment of the District Court is therefore AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation