BATS a/k/a Gary Pelphrey, Edward Buckner, Roberto Moraes, Wesley Crowe, Jeffrey Selman, Marie Shockley, and Roberta "Bobbi" Goldberg, Plaintiffs,

v.

COBB COUNTY, GEORGIA; Sam Olens, in his official capacity as Chairman of the Cobb County Commission and in his individual capacity; Phillip T. "Murray" Homan, in his official capacity as Chairman of the Cobb County Planning Commission and in his individual capacity, Defendants.

Civil Action No. 1:05–CV–2075–RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 6, 2007.

---

Margaret Fletcher Garrett, Gerald R. Weber, American Civil Liberties Union Foundation of Georgia, Inc., Atlanta, GA, for Plaintiffs.

Mark Alan Adelman, Office of Cobb County Attorney, Law Department, Marietta, GA, Larry Hugh Chesin, David F. Walbert, Parks, Chesin & Walbert, Atlanta, GA, for Defendant.

### *ORDER*

STORY, District Judge.

By Order dated September 8, 2006, this Court granted summary judgment in part to Plaintiffs, concluding that the Cobb County Planning Commission's procedure in 2003 and 2004 for inviting guests to deliver invocation prayers at its public meetings violated the Establishment Clause of the First Amendment. *See Pel-*

*phrey v. Cobb County*, 448 F.Supp.2d 1357, 1374 (N.D.Ga.2006). The Court ordered the parties to submit additional briefing on the issue of appropriate relief. After reviewing the parties' filings on this matter, the Court now enters the following Order.

### Background

The facts of this case are fully recited in the prior Orders of this Court. *See id.* at 1359–64; *see also Pelphrey v. Cobb County*, 410 F.Supp.2d 1324, 1328 (N.D.Ga. 2006) (denying preliminary injunction). In brief, Plaintiffs brought this action under 42 U.S.C. § 1983 challenging the constitutionality of Cobb County's practice of beginning meetings of its Board of Commissioners and its Planning Commission with invocational prayers delivered by invited guests. Plaintiffs took issue with both the sectarian content of some of the prayers and the manner in which guests were selected to lead the prayers.[1]

Approximately 70% of the invited guests gave Christian prayers, which typically referenced "our Heavenly Father" or "in Jesus' name we pray." *Pelphrey*, 448 F.Supp.2d at 1361. Concluding that sectarian references alone that were not directed or pre-censored by Cobb County did not contravene the Establishment Clause under the Supreme Court's decision in *Marsh v. Chambers*, 463 U.S. 783,

---

1. Defendants argue for the first time in their post-summary-judgment papers that Plaintiffs are not entitled to challenge the selection procedures of the Planning Commission because "not a single word can be found in the Complaint where Plaintiffs complain about how clergy were selected." (Defs.' Resp. at 9.) As Plaintiffs correctly point out, however, a complaint need only "give the defendant fair notice of what the plaintiffs' claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Despite Defendants' protestations, the Complaint gives fair notice of Plaintiffs' general challenge to the prayer practices of the Planning Commission, including the manner in which prayer-givers

were selected. *See Marsh*, 463 U.S. at 793, 103 S.Ct. 3330 (treating manner in which prayer-givers are selected as one of several "factors" in analysis of Establishment Clause challenge to state legislative prayer practice).

In any event, the Court has previously instructed the parties to brief the issue of selection procedures, and the parties' papers on summary judgment fully addressed the issue. Having raised no objection until now, the issue of Defendants' selection procedures has, at the very least, been litigated by "express or implied consent of the parties, [and thus] shall be treated in all respects as if [it] had been raised in the pleadings." Fed.R.Civ.P. 15(b).

103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the Court granted summary judgment to Defendants on this aspect of Plaintiffs' claims. *Pelphrey*, 448 F.Supp.2d at 1368–70.

The Court then turned to consider the manner in which individuals were selected by the Board of Commissioners and the Planning Commission to deliver the invocation prayers. *Id.* at 1370–74. The Board of Commissioners invited prayer leaders by randomly selecting invitees from a "Master List" of a diverse set of religious organizations compiled from the Yellow Pages, the Internet, business cards, and leaflets collected at public functions and in the mail. *Id.* at 1362. Finding no improper motive in its manner of selection, the Court granted summary judgment to Defendants on this aspect of Plaintiffs' challenge. *Id.* at 1373.

The Planning Commission, on the other hand, employed a markedly less inclusive selection process, at least in 2003 and 2004. Ms. Richardson, a deputy clerk to the Planning Commission, selected only from the Yellow Pages, and her 2003–04 copy of the Yellow Pages contained cross-out markings through the contact information of Islamic, Jehovah's Witness, Jewish, and Latter Day Saint churches. Leaders of those faiths were categorically excluded from the pool of invitees in 2003 and 2004. *Id.* at 1363–64. On this record, the Court concluded that the Planning Commission's selection procedure in 2003 and 2004 violated the First Amendment. *Id.* at 1370–74.

The Court noted, however, that the unconstitutional selection practice of the Planning Commission appeared to cease in 2005, prior to the commencement of this litigation. Ms. Richardson's 2005 copy of the Yellow Pages did not contain any cross-out markings, and Ms. Richardson contacted both a synagogue and mosque in 2005 to lead the invocation prayer. *Id.* at 1364.

Having previously declared the practice employed by the Planning Commission in 2003–2004 unconstitutional, the Court now turns to fashion the appropriate remedy.

### Discussion

Plaintiffs seek a declaration of unconstitutionality, a permanent injunction, and nominal damages. Plaintiffs must demonstrate, at the threshold, that they have standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env. Servs.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The Court has previously declared that the clergy selection procedures of the Cobb County Planning Commission in 2003–2004 violated the Establishment Clause. The Court thus turns to consider whether Plaintiffs have standing to seek nominal damages and injunctive relief, and if so, whether such relief is appropriate.

### I. Article III Standing

■ Defendants challenge for the first time in this litigation Plaintiff's Article III standing. Defendants correctly point out that standing may be raised at any time, even after summary judgment has been entered in the case. *Florida Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir.1999) (stating that "every court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates"). Plaintiffs respond that they have both traditional Article III standing and taxpayer standing under *Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). The Court agrees that Plaintiffs standing in this action is supported by both traditional and taxpayer standing.

#### A. Traditional Article III Standing

Article III of the Constitution limits the judicial power of the United States to the resolution of "Cases" and "Controversies." U.S. Const. art. III. To meet the

case-or-controversy requirement, a plaintiff must show (1) that he personally has suffered an actual or prospective injury as a result of the allegedly illegal conduct; (2) that the injury can be fairly traced to the challenged conduct; and (3) that the injury is likely to be redressed through court action. *Valley Forge Christian Coll. v. Ams. United for Sep. of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

■ "For Establishment Clause claims based on non-economic harm, the plaintiffs must identify a 'personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees.'" *Glassroth v. Moore,* 335 F.3d 1282, 1292 (11th Cir.2003) (quoting *Valley Forge,* 454 U.S. at 485, 102 S.Ct. 752)) (emphasis removed). Thus, a plaintiff has standing if he is " 'directly affected by the laws and practices against [which his] complaints are directed,' " *id.* (quoting *Saladin v. City of Milledgeville,* 812 F.2d 687, 692 (11th Cir.1987), "such as where the plaintiffs are 'forced to assume special burdens to avoid unwelcome religious exercises,' " *id.* (quoting *ACLU v. Rabun County Chamber of Commerce, Inc.,* 698 F.2d 1098, 1107 (11th Cir.1983)), or where the plaintiffs "come into direct contact with the offensive conduct," *Saladin,* 812 F.2d at 692; *see also Valley Forge,* 454 U.S. at 487 n. 22, 102 S.Ct. 752 (stating that plaintiff may establish standing by showing that he has been "subjected to unwelcome reli-

gious exercises or w[as] forced to assume special burdens to avoid them"); *School District of Abington Township v. Schempp,* 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 1572 n. 9, 10 L.Ed.2d 844 (1963) (holding that students and parents had standing to challenge public school's practice of Bible reading in school where children were forced to sit through the readings as a condition of attending public school).

In *Saladin,* several citizens of the City of Milledgeville brought an Establishment Clause challenge to the city's official seal, which bore the word "Christianity" alongside the word "Liberty" in its design. 812 F.2d at 689. The seal was used to authenticate official documents, including city stationary that was sent to three of the plaintiffs from the City's Water Works. *Id.* at 692. Two of the plaintiffs also observed the seal on proclamations issued by the mayor and sent to civic organizations of which they were members. *Id.* Drawing on the Supreme Court's decision in *Schempp,* the Eleventh Circuit reasoned that "a non-economic injury which results from a party's being subjected to unwelcome religious statements can support a standing claim." *Id.* Because the plaintiffs "c[a]me into direct contact with the offensive conduct" by receiving official municipal papers embossed with the city seal, the Court held that the plaintiffs had standing to pursue their Establishment Clause challenge. *Id.*

This direct-contact standing rationale [2] was also applied in *ACLU v. Rabun Coun-*

---

**2.** Other circuits have similarly applied the direct-contact rationale in finding standing in Establishment Clause cases. *See, e.g., Books v. City of Elkhart,* 235 F.3d 292, 301 (7th Cir.2000) ("[A] plaintiff may allege an injury in fact when he is forced to view a religious object that he wishes to avoid but is unable to avoid because of his right or duty to attend the government-owned place where the object is located."); *Suhre v. Haywood County,* 131 F.3d 1083, 1090 (4th Cir.1997) ("The cogniza-

ble injury caused by personal contact with a public religious display may thus satisfy the injury-in-fact requirement for standing to bring an Establishment Clause case. The plaintiff need not meet any additional change-in-behavior or avoidance requirement."); *Washegesic v. Bloomingdale Public Schools,* 33 F.3d 679, 683 (6th Cir.1994) (finding standing because picture of Jesus Christ in public school impaired use of school by non-

*ty Chamber of Commerce, Inc.,* 698 F.2d 1098, 1107 (11th Cir.1983). There, the plaintiffs brought an action to enjoin the maintenance of an illuminated Latin cross on an 85–foot structure in Black Rock Mountain State Park. *Id.* at 1101. Several plaintiffs testified that they had previously camped in the park and were "presently forced to locate [to] other camping areas or to have their right to use Black Rock Mountain State Park conditioned upon the acceptance of unwanted religious symbolism." *Id.* at 1108. Based on this testimony, the Court concluded that the plaintiffs had "demonstrated an individualized injury, other than a mere psychological reaction, which they have suffered 'as a consequence' of the challenged action." *Id.* Because the plaintiffs, like the school-children's forced exposure to religious prayer in *Valley Forge,* were subjected to unwelcome religious exercise or were forced to assume special burdens to avoid religious exercise, the Eleventh Circuit concluded that the plaintiffs had standing to challenge the erection of the Latin cross. *Id.*

The Eleventh Circuit reaffirmed its decisions in *Saladin* and *Rabun County* in *Glassroth v. Moore,* 335 F.3d at 1284. There, three attorneys challenged Chief Justice Roy Moore's placement of a monument to the Ten Commandments in the rotunda of the Alabama State Judicial Building. *Id.* The attorneys testified that they considered the monument offensive, and that it made them feel like outsiders. Two attorneys testified that they had changed their behavior as a result of the presence of the monument, and one testified that he had purchased law books and online research "to minimize use of the state law library" and had hired messengers "to file documents in the courts locat-

ed in the building" so he could avoid the monument. *Id.* at 1292. On these facts, the Eleventh Circuit concluded that the two attorneys "who have altered their behavior as a result of the monument have suffered and will continue to suffer injuries in fact sufficient for standing purposes." *Id.*

█ The record reflects that each of the Plaintiffs either personally attended, attended via the Internet, or plan to attend meetings of the Planning Commission. *See Pelphrey,* 410 F.Supp.2d at 1325. For example, Mr. Selman attended three Planning Commission meetings in person in the last several years and "watched numerous Commission meetings and Planning Commission meetings on the internet; [and] he has watched the invocation each time he has viewed a meeting." (Defs.' Resp. to Pls.' Statement of Mat. Facts ¶ 80.) Ms. Goldberg attended or viewed at least ten Cobb government meetings and at least one Planning Commission meeting. (*Id.* ¶ 84.) Marie Shockley attended the Cobb County Planning Commission meeting of July 6, 2006, during which Reverend Jack Keller of Flag Point Church offered the invocation "[i]n the name of Jesus Christ." (Shockley Aff. [56] ¶¶ 6–9.) Mr. Crowe attended the same meeting via the Internet and observed Reverend Keller's invocation. (Keller Aff. [56] ¶¶ 5–6.) Each of these individuals came into direct contact with the prayer practices at issue in this litigation. Whereas in *Rabun County,* the plaintiffs' *use of public land* was conditioned upon observing a religious practice or symbol, *see Rabun,* 698 F.2d at 1107, here, Plaintiffs' *participation in local governmental affairs* was conditioned upon observing a religious practice. Because Plaintiffs came into direct contact with the

Christian students and visitors); *Gonzales v. North Township,* 4 F.3d 1412, 1416 (7th Cir. 1993) (finding standing in challenge to cruci-

fix in public park to residents who "stated that they avoid the area of the Park near the crucifix").

prayer practices at issue and were forced to observe the practices as a condition of their attendance, Plaintiffs have suffered an individualized injury, other than a mere psychological reaction, sufficient for standing purposes. This injury may be remedied by a court declaration that the clergy selection procedures incorporated by the Cobb County Planning Commission are unconstitutional, a nominal damage award, or an injunction prohibiting the Planning Commission from using those procedures in the future. Accordingly, standing is present.

Defendants attempt to parse out the selection procedures of the Cobb County Planning Commission from the nature of the prayers given at meetings, arguing that Plaintiffs did not have direct contact with the manner in which prayer-givers were selected and thus may not challenge the selection procedures. In the Court's view, the manner in which speakers are selected to give invocational prayers is inextricably intertwined with the subsequent delivery of those prayers at public meetings attended by Plaintiffs. *See Marsh,* 463 U.S. at 793, 103 S.Ct. 3330 (treating manner of selection of prayer-giver as one of several "factors" to consider in weighing validity of state legislative prayer practice).

In any event, contrary to Defendants' argument, at least one Plaintiff in this action had direct involvement in the unconstitutional selection procedures employed by the Planning Commission. In June of 2004, Mr. Selman contacted Planning Commissioner Bob Ott to request that the Planning Commission add certain non-Christian clergy to the list of prayer-givers from which Ms. Richardson was selecting. (Pls.' St. of Mat. Facts [52–3] ¶ 89.) Mr. Ott did not give the list to Ms. Richardson, effectively denying Mr. Selman's request. (*Id.*) Mr. Selman thus suffered an individualized injury—the denial of his request to add prayer-givers to the list—which relates directly to the manner in which prayer-givers were selected. At the very least, Mr. Selman has standing to challenge the specific selection procedures that this Court has previously held unconstitutional. *See Glassroth,* 335 F.3d at 1293 (concluding that it is unnecessary to determine the standing of other plaintiffs in action after court had determined certain plaintiffs had standing); *Rabun County,* 698 F.2d at 1108–09 (same); *see also Planned Parenthood Ass'n v. Miller,* 934 F.2d 1462, 1465 n. 2 (11th Cir.1991) ("Since Dr. Moore has standing, we need not consider the standing of the other parties.").

For these reasons, Plaintiffs have traditional Article III standing to challenge whether religious invocation prayers are given as a result of a procedure violative of the Establishment Clause.

**B. Taxpayer Standing**

Although the Court concludes that Plaintiffs have traditional standing to maintain this action, the Court examines whether Plaintiffs also have an alternative ground for standing under the doctrine of taxpayer standing.

To establish standing as a municipal taxpayer, Plaintiffs must show that they are Cobb County resident taxpayers and that Cobb County has used or will use tax money on the unconstitutional selection procedure. *See Flast v. Cohen,* 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968); *Marsh,* 463 U.S. at 786 n. 4, 793–94, 103 S.Ct. 3330 (concluding that plaintiff had taxpayer standing to challenge selection of same minister to deliver invocation prayer for sixteen years at legislative meetings and to challenge content of minister's prayers). Taxpayer standing may be shown even where the amount expended on an unconstitutional program is minuscule. *Harvey v. Cobb County,* 811 F.Supp. 669, 675–76 (N.D.Ga.1993) *aff'd* 15

F.3d 1097 (11th Cir.1994) (concluding that taxpayer had standing to challenge Ten Commandments display, despite fact that display was donated, because tax revenues, "however small and indirect," were expended to transport display and to supervise inmates who cleaned display); *see also Hinrichs v. Bosma*, 440 F.3d 393, 396–98 (7th Cir.2006) (concluding that four Indiana taxpayers had standing to challenge invocation prayer delivered at legislative meetings even if "piddling" amounts were expended, because "tax dollars supported the cost of mailings to guest clerics … and the cost of web-streaming the invocation portions of the 2005 sessions …").

■ The parties do not dispute that the seven Plaintiffs in this action are Cobb County residents and taxpayers, nor that money was expended by Cobb County on selecting, inviting, and thanking volunteers. (*See* Pl.'s Statement of Mat. Facts ¶¶ 62–65; Defs.' Statement of Mat. Facts ¶ 15.) The Court has previously observed as much. *Pelphrey*, 448 F.Supp.2d at 1360 ("The individuals providing the prayer receive no compensation for their service, although the County expends funds (both in terms of physical materials and time) in selecting, inviting, and thanking volunteers."). The evidence in the record and the prior findings of this Court establish that Plaintiffs have standing to challenge the selection procedures of the Cobb County Planning Commission as Cobb County taxpayers because Cobb County tax funds were expended on the selection procedures at issue.[3]

---

**3.** The Supreme Court's recent decision in *Hein v. Freedom From Religion Foundation, Inc.*, —— U.S. ——, 127 S.Ct. 2553, —— L.Ed.2d —— (2007), is not to the contrary. In *Hein*, a plurality of the Supreme Court held that taxpayer standing is not available in a challenge under the Establishment Clause to discretionary expenditures by Executive Branch officials because such an action "is not directed at an exercise of congressional power, and thus lacks the requisite 'logical nexus' between taxpayer status 'and the type of legislative enactment attacked.'" *Id.* at 2567–68 (plurality opinion). Here, the expenditures attacked by Plaintiffs are made by a local legislative body—the Cobb County Planning Commission—and thus *Hein* is inapposite.

Rather, the Court returns to the Supreme Court's decision in *Marsh* for guidance on the question of taxpayer standing. There, the Court concluded that the plaintiffs had taxpayer standing in their challenge to an invocational prayer delivered before a state legislative body because the chaplain was compensated by state legislative funds. *Marsh*, 463 U.S. at 786 n. 4, 103 S.Ct. 3330. The Court also concluded, albeit implicitly, that the plaintiffs had standing to challenge whether the repeated selection of the same minister to deliver the invocational prayer over sixteen years violated the Establishment Clause. *Id.* at 793–94, 103 S.Ct. 3330.

*Marsh* remains good law until the Supreme Court says otherwise. As the Court has repeatedly admonished: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 483–84, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *see also Tenet v. Doe*, 544 U.S. 1, 11, 125 S.Ct. 1230, 161 L.Ed.2d 82 (2005) (same); *Hohn v. United States*, 524 U.S. 236, 252–53, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent."). The Eleventh Circuit has also repeatedly invoked this principle. *E.g., Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 525 (11th Cir. 1997) ("It may be that the Supreme Court has cut [a prior decision] back so far that it will not survive. Perhaps, but we are not convinced we are authorized to sing the dirge of [that prior decision]. We will leave that to

## II. Nominal Damages

Having concluded that Plaintiffs have standing, the Court turns to consider whether an award of nominal damages is appropriate.

■ In cases where a plaintiff establishes the violation of an "absolute" constitutional right—that is to say, a right fundamental to our concept of ordered liberty—but cannot prove actual injury, a court is obligated to award nominal damages. *Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (holding that denial of procedural due process without proof of absolute injury nonetheless "entitled" plaintiffs to award of nominal damages); *see also Farrar v. Hobby*, 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (stating that *Carey* "obligates a court to award nominal damages" for a procedural due process violation when plaintiff cannot establish actual injury); *Caban–Wheeler v. Elsea*, 71 F.3d 837, 841–42 (11th Cir.1996) (construing *Carey* to require award of nominal damages even where plaintiff did not request jury instruction concerning nominal damages and jury did not award such damages). In *Carey*, the Supreme Court emphasized the historical importance of awarding nominal damages in cases vindicating fundamental rights, explaining:

> Common-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.

*Carey*, 435 U.S. at 266, 98 S.Ct. 1042.

■ The right to be free from a state establishment of religion is a fundamental right, no less "absolute" and foundational than the right to procedural due process. *See Everson v. Bd. of Educ.*, 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (incorporating Establishment Clause against the states vis-a-vis Fourteenth Amendment). Thus, a plaintiff who vindicates a right under the Establishment Clause, but does not demonstrate actual injury, is entitled to an award of nominal damages. *See Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (awarding nominal damages for First Amendment injury). Plaintiffs are entitled to judgment in their favor for nominal damages in the amount of $1.00.[4]

## III. Injunctive Relief

■ To have standing to seek permanent injunctive relief, Plaintiffs must prove a real and immediate threat that they will be subject to the unconstitutional selection procedures employed by the Cobb County Planning Commission in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). "Simply because a party prevails on the

the Supreme Court...."); *Fla. League of Prof'l Lobbyists v. Meggs*, 87 F.3d 457, 462 (11th Cir.1996) (explaining that lower courts "are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court.").

4. Defendants have not raised absolute, sovereign, or qualified immunity as a defense to Plaintiffs' claims. Thus, the Court has no occasion to consider whether Defendants, in either their official or individual capacities, are entitled to immunity from Plaintiffs' nominal-damages claim.

merits of a constitutional claim does not mean that the party is automatically entitled to prospective injunctive relief." *Wooden v. Bd. of Regents of Univ. System of Ga.*, 247 F.3d 1262, 1283 (11th Cir.2001). While "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102, 103 S.Ct. 1660.

Here, besides providing evidence of the discrete acts of Ms. Richardson in selecting guests from an exclusionary list during 2003 and 2004, Plaintiffs point to no evidence that would indicate Defendants are likely to repeat the unconstitutional conduct of Ms. Richardson in the future. In other words, the record is devoid of evidence that Defendants are likely to select invitees pursuant to an unconstitutional procedure which excludes certain religious leaders and other individuals from the pool of potential prayer-givers.[5] That Cobb County *may* select invocational prayer-givers improperly in the future is insufficient alone to confer standing to seek injunctive relief. *See Lyons*, 461 U.S. at 102, 103 S.Ct. 1660.

Moreover, any injunctive relief the court might award would not redress the injuries Plaintiffs suffered as a result of the unconstitutional selection process. Here, the evidence reflects that the Planning Commission stopped employing the unconstitutional procedure in 2005—prior to the commencement of this litigation. Thus, an injunction would not operate to redress the unconstitutional conduct. *See Wooden*, 247 F.3d at 1285 & n. 21 (noting that where an alleged constitutional violation "had been completed well before Plaintiffs filed their complaint," injunctive relief would not redress plaintiffs' injuries).

Accordingly, because the Court finds that Plaintiffs have failed to demonstrate an immediate threat of injury and failed to demonstrate that an injunction will redress their injuries, Plaintiffs do not have standing to seek a permanent injunction.

### Conclusion

For the foregoing reasons, the Court **DECLARES** that the clergy selection procedures employed by the Cobb County Planning Commission in 2003 and 2004 violate the Establishment Clause as interpreted in *Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiffs and against Defendant in the amount of $1.00. Insofar as Plaintiffs seek injunctive relief in this action, their request is **DENIED.**

**SO ORDERED.**

---

**5.** Indeed, the record reflects the contrary. After the commencement of this litigation, the Defendants consolidated the selection procedure used by the Board with the procedure used by the Planning Commission. At present, religious leaders are invited to meetings of the Board and the Planning Commission by random selection from the Board's "Master List," a procedure found constitutionally permissible by this Court. *See Pelphrey*, 448 F.Supp.2d at 1373.